IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

_____

No. 14-1206

_____

**FILED**
**November 4, 2015**
**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

IN RE: M.M., B.M., C.Z., AND C.S.

_____

Appeal from the Circuit Court of Roane County
The Honorable Thomas C. Evans, III, Judge
Case No. 14-JA-8-11

AFFIRMED

_____

Submitted: September 22, 2015
Filed: November 4, 2015

Teresa C. Monk, Esq.
Walton, West Virginia
Counsel for Leslie S., Petitioner

Robert Goldberg, Esq.
Spencer, West Virginia
Counsel for Samuel S., Petitioner

Kevin B. Postalwait, Esq.
Ripley, West Virginia
Counsel for Samuel S., Petitioner

Patrick Morrisey, Esq.
Attorney General
Katherine M. Bond, Esq.
Assistance Attorney General
Charleston, West Virginia
Counsel for the West Virginia Department
of Health and Human Resources,
Respondent

Anita Harold Ashley, Esq.
Spencer, West Virginia
Guardian ad litem

JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.     "In reviewing challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review applies.  The final order and ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. WV Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997).

2.     "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected.  These findings shall not be set aside by a reviewing court unless clearly erroneous.  A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.  However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In the Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996).

i

3. "Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order." *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001).

4. "As a general rule the least restrictive alternative regarding parental rights to custody of a child under W. Va. Code, 49-6-5 (1977) will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened[.]" Syl. Pt. 1, in part, *In re: R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980).

5. "'"Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).' Syllabus point 4, *In re Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989)." Syl. Pt. 1, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

Benjamin, Justice:

The instant action is before the Court upon the appeal of Petitioners Leslie S. and Samuel S. from a disposition order entered October 27, 2014, denying the Petitioners' motions for improvement periods and terminating their parental and custodial rights.[1]  The circuit court found that the Petitioners could not correct the conditions of abuse and neglect in the near future and termination was necessary for the children's welfare.  Upon review of the parties' arguments, the record before us on appeal, and applicable legal precedent, we affirm the circuit court's order.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The Department of Health and Human Resources ("the DHHR") filed an abuse and neglect petition alleging that the Petitioners were arrested on February 1, 2014, for committing domestic battery and domestic assault against their son, C.S., at a youth basketball league game in the presence of numerous witnesses.[2]  According to the petition, the Petitioners cursed at C.S., calling him a "son of a bitch" and "mother fucker"

---

[1] Because this case involves minors, initials are used to identify individuals in accordance with Rule of Appellate Procedure 40(e).

[2] Petitioner Leslie S. is the biological mother of all four children involved in this case.  Samuel S. is the biological father of C.S., age 11, and the step-father of the other children, all teenage boys.  The children have lived in the family home located in Spencer, West Virginia, since moving from the state of Florida approximately six years ago.  The two older boys, M.M., age 18, and B.M., age 17, have had no contact with their biological father, M.M., Sr., for many years.  C.Z., age 15, has had only limited personal contact with his biological father, Max Z., since the family moved from Florida.

and physically abused him by pulling him, slinging him into a wall, grabbing his face, and knocking his head into a door multiple times. During the incident, C.S. was crying profusely and trying to escape from the Petitioners. Witnesses called law enforcement, and the Petitioners were arrested for domestic battery and assault.

The DHHR was notified of the incident and it began an investigation. A protection plan was put into place during the investigation, which allowed all four of the children to stay with a family who had been present during the incident and were affiliated with the church and the basketball league. The children were removed from the Petitioners' home by emergency ratification and a petition alleging abuse and neglect was filed on February 13, 2014.[3] However, the petition failed to allege facts constituting imminent danger. A Multidisciplinary Treatment Team ("MDT") immediately convened and the parents originally agreed to allow the children to remain with the placement family until after the initial court appearance. The Petitioners subsequently changed their minds and all of the children, except C.S., were required to return home. C.S. stayed with the placement family because a condition of the Petitioners' bonds did not allow

---

[3] The petition also contained allegations against the biological fathers of M.M., B.M. and C.Z. as well; however, as their rights are not at issue in this appeal, the facts herein pertain only to the Petitioners. The circuit court's October 27, 2014, order terminated the parental rights of M.M. and B.M.'s biological father for abandonment. C.Z.'s biological father remains involved in the abuse and neglect case.

contact with him. The Petitioners were subsequently convicted of misdemeanor criminal charges relating to the case.

The circuit court held an adjudicatory hearing on the DHHR's petition on March 10, 2014. Both M.M. and B.M. testified in camera regarding the abuse and neglect they suffered at the hands of the Petitioners and the circuit court concluded that the children were in imminent danger of further emotional abuse and ordered that the remaining three children be removed from the home.[4] The circuit court granted the DHHR custody of the children and they were placed in foster care. The Petitioners waived their right to a preliminary hearing on the removal and the circuit court granted the Petitioners supervised visitation with C.S. and C.Z.

At a subsequent hearing on April 22, 2014, Petitioner Samuel S. admitted to the allegations of abuse and neglect contained in the DHHR's petition. Specifically, he admitted that he verbally abused C.S. at the basketball game, that he has disciplined the

---

[4] Both M.M. and B.M. originally testified at an in camera hearing that neither wanted to return home because of the abuse they endured. They testified that if they were required to return home, both would leave the home as soon as they turned eighteen. B.M. has been steadfast in his desire to have nothing to do with the Petitioners, refusing visitation opportunities with them during the pendency of this case. He has expressed multiple times that he would be fine with termination of parental rights. In her testimony, Leslie S. admitted that she would be willing to give up her custodial rights to B.M., and that he should not be forced to return home. She expressed that she hoped he would one day change his mind, and did not want to "close the door" on that possibility.

3

children by requiring them to stand in the corner for hours at a time, that he curses at the children, and that he and Petitioner Leslie S. yell and curse at each other in the children's presence.

Following that hearing, the children have been moved to multiple foster homes located in different counties.[5] The guardian ad litem reports that M.M., who has turned eighteen and is no longer subject to the jurisdiction of the circuit court, has recently moved back in with the Petitioners.[6] The three younger boys remain in foster care in two different counties. B.M. and C.Z., who have been in a total of four foster homes since the case commenced in March 2014, were placed in a foster home together in January 2015 and they have been adjusting well. B.M. is a straight A student and athlete, and C.Z., who previously struggled in school, is now an A/B student in high school.

C.S., the youngest child, is currently in a new foster home in a different county, his eighth placement in the last nineteen months. C.S. has had a number of inpatient hospitalizations for emotional issues. According to the guardian ad litem, C.S.'s

---

[5] The DHHR represents that it was difficult to find foster home placements for the children within their home county. The DHHR also states that it was unable to find a suitable foster placement that could accommodate all four children together.

[6] The guardian ad litem represented that M.M. has recently moved back into the family home with his pregnant girlfriend. She reports that although M.M. is a bright young man, he has chosen not to further his education or seek employment at this time.

new specialized foster home appears to be a good fit for him, as his foster parents seem to have a good understanding of C.S.'s emotional problems. The boys' foster families have agreed to facilitate monthly visitation between them.

Pursuant to the request of the guardian ad litem, the Petitioners underwent psychological evaluations at Saar Psychological Services in August 2014 in order to determine parental fitness and what terms and conditions would be required to remedy any concerns raised in the evaluation if an improvement period were to be granted. The evaluations took an inordinate amount of time to complete, taking several hours over the course of two days. In the evaluations, Leslie S.'s prognosis was "guarded" and Sam S.'s prognosis was "very guarded."

On September 5, 2014, the circuit court conducted the first of two evidentiary hearings regarding the Petitioners' motions for improvement periods. The guardian ad item filed her report in which she indicated that she had "very mixed feelings about whether an improvement period should be granted to [the Petitioners]. However, [she was] leaning against it." The DHHR filed its case plan recommending that the circuit court grant the Petitioners an improvement period. At the beginning of the hearing, the circuit court clarified whether there was an objection to the Petitioners receiving an improvement period, to which the guardian ad litem responded "yes." Counsel for the Petitioner Leslie S. indicated that she was aware that the guardian ad

5

litem might oppose an improvement period and that they were prepared to proceed with an evidentiary hearing. The circuit court then heard testimony regarding whether the Petitioners should be granted an improvement period or if their parental rights should be terminated.

According to the evidence presented during the evidentiary hearing, Leslie S. admitted that she mentally and emotionally abused her children and that she had begun services with therapist Susan Greathouse and parent educator Lora Davis to correct the abuse. She testified that she would be willing to give up her custodial rights to B.M. and that she would do anything asked of her to rectify the conditions of abuse and neglect. She testified that she would like C.S. to come home, but that he still needs a lot of help and that he is not ready to come home.

The circuit court heard testimony that Leslie S. was involved in a previous incident at the Spencer City Pool in 2012, where she was accused of physically assaulting M.M. Instead of filing a petition, the DHHR arranged for in-home services through Children's First, which occurred once weekly from August 2012 through February 2013. These services were designed to remedy that situation, which is substantially similar to the circumstances of the instant case. The records admitted into evidence show that significant effort on the part of the service provider was undertaken to deal with many major family problems, but that, by the end of the services, little if any progress had been

made by the Petitioners. The record reflects that the services ended, not because the problems were solved, but because the provider had used up all of the allotted time. When asked what she learned from her months of services in 2012, Leslie S. responded, "I didn't really learn nothing."

The circuit court also heard testimony that the children were previously removed from Leslie S.'s custody while living in Florida after she was found to have failed to protect them from her ex-husband, Max Z.'s abuse. The children resided with Leslie S.'s mother for a period of approximately five years. Leslie S. received parenting classes during that court process as well. After her mother died, Leslie S. returned to court in Florida and was awarded custody of her children. Evidence was also presented that Leslie S. receives disability benefits and does not work outside the home. She is prescribed multiple medications and spends a significant amount of time in bed, virtually unable to function.

There was also evidence presented that Samuel S., also a recipient of disability benefits, is likewise prescribed multiple medications. His treating family physician, Dr. Carroll Christiansen, testified that Samuel S. has a psychiatric diagnosis of Bipolar I and an adjustment disorder with depressed mood, in addition to several other medical issues related to back pain, hypertension, diabetes, and heart disease. He has a prior felony record involving witness tampering.

7

Testimony continued at a second hearing conducted on September 17, 2014. During this hearing, Petitioner Samuel S. testified that he was working on anger control problems with therapist Susan Greathouse. Although Samuel S. testified that he has learned to use "I-messages" to improve his communication thanks to his therapist, Susan Greathouse was not called to testify at the hearing. He also testified that Lora Davis, parent educator, provided services to help him communicate better. He testified that he needed to correct his attitude, anger management, and that he needed to communicate better.

Lora Davis, who worked with this family on a weekly basis for five months, testified that in her eight years of working with Family Advantage, this family is one of the most challenging. She reports that after months of working with them, the Petitioners have made only minimal progress. She explained that her efforts to explain the basic course material have been continuously met with resistance from the Petitioners, particularly Samuel S. She opined that Samuel S. needs anger management, and that both parties need a psychiatric consultation to determine whether their medications are effectively treating their mental conditions. She stated that if the children were to return home at this point, the situation would be "absolutely the same."

8

Jennifer Bogar, the therapist for M.M., B.M., and C.Z. also testified. She testified that M.M. wanted to return to the Petitioners' home and to his school of origin, but she opined that this desire was probably influenced more by wanting to return to his school. She testified that she had reservations about M.M. returning to the Petitioners' home and that he may become emotionally unstable if he returned. In regards to B.M., Ms. Bogar testified that he does not want to return to the Petitioners' home, that he declined every opportunity for visitation with the Petitioners, and that he believes the cycle of behavior will continue if he returns to the Petitioners' home. With respect to C.Z., Ms. Bogar testified that he wants to return to the Petitioners' home but has concerns that the situation may not be as good as the Petitioners promised him it would be. Ms. Bogar testified that she was concerned that the Petitioners' home would continue to be detrimental for C.Z. without additional services, despite Samuel S.'s testimony that he has changed.

Finally, Child Protective Services worker Jerry Burge testified regarding the DHHR's recommendations for the Petitioners. Mr. Burge testified that the DHHR recommended an improvement period for the Petitioners and had developed a case plan with terms and conditions that had been reviewed by all the parties. However, Mr. Burge also testified that the Petitioners did not benefit from the six months of services they received in 2012 to address the same issues as presented in this case. He further testified

that he has worked with the family off and on for the past two years and that he has not seen many changes in the Petitioners' behaviors.

Following these two evidentiary hearings, the circuit court entered a dispositional order on October 27, 2014. The circuit court found that from August 2012 through February 2013, the Petitioners received services designed to remedy the same abusive and neglectful behaviors that they exhibited in this case. The circuit court found that by the end of those services, "little, if any, progress had been made by [the Petitioners]." The circuit court explained that the goal of the previously offered services was to prevent further abuse and neglect, but the mechanisms taught, "simply did not work and another one of the children was injured." The circuit court also stated that the Petitioners had been provided services in this case for approximately the length of an improvement period with little progress.

In determining to deny the Petitioners an improvement period and to terminate the parental and custodial rights, the circuit court explained,

> [t]he fact is that [the Petitioners] have been involved with the service providers for two stints, without progress, and despite education in appropriate parenting skills, [C.S.], their youngest son, was physically assaulted in front of a myriad of witnesses. Simply put, these adult respondents have not responded to or followed through with rehabilitative efforts of social and other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the children, as evidenced by the continuation of conditions which threatened the health, welfare or life of their children.

10

The circuit court found that the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems or assist the abusing parent or parents in fulfilling their responsibilities to the children. The circuit court concluded that continuation in the Petitioners' home was not in the best interests of the children. In addressing Petitioner Leslie S.'s rights to M.M., B.M., and C.Z., who are all children fourteen years or older, the circuit court considered their wishes and ruled accordingly. Petitioner Leslie S.'s custodial rights were terminated only to M.M. and C.Z., because they did not desire that her full parental rights be permanently terminated. Upon B.M.'s request, Petitioner Leslie S.'s full parental rights to him were terminated. C.S., ten years old at the time, was too young to have his wishes considered, but the court ordered termination of all parental rights as to C.S. as well. It is from this order that the Petitioners now appeal.

## II. STANDARD OF REVIEW

This Court has held that

> [i]n reviewing challenges to the findings and conclusions of the circuit court, a two-prong deferential standard of review applies. The final order and ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. W.Va. Ethics Comm'n*, 201 W. Va. 108, 492 S.E.2d 167 (1997).

11

As it pertains specifically to abuse and neglect cases, this Court has held,

> [a]lthough conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

Syl. Pt. 1, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996). With these standards in mind, we now turn to the issues before us.

## III. ANALYSIS

The first issue before us is whether the circuit court erred in its consideration of the Petitioners' performance in pre-disposition services when it denied the requested improvement periods. We also consider a second issue of whether the circuit court erred in denying the Petitioners' post-adjudication improvement periods where, to the contrary, the DHHR's initial case plan recommended that improvement periods be granted.

12

With respect to the first issue before us, the Petitioners argue because of their positive performance in pre-disposition services, the circuit court erred by denying them improvement periods. The Petitioners contend that they admitted their problems, which they claim are "easily correctable," and that they testified to their willingness to work towards that improvement of those problems. Therefore, the Petitioners claim that they met their burden to prove by clear and convincing evidence that they are "likely to fully participate in the improvement period[s]," as required by this Court's extensive case law and the improvement-period statute, West Virginia Code § 49-6-12 (1996). They claim that their therapist, Susan Greathouse, believes there has been a recent breakthrough and that she recommended that the improvement period go forward.[7] The Petitioners claim that although there was a petition detailing their problems, they had no means of relating the services to the correction of the problems because they had no case plan or "road map" to guide them.

The DHHR responds that although it originally recommended that the Petitioners be granted an improvement period at the dispositional hearing, it cannot now say that the circuit court abused its discretion because the Petitioners have not demonstrated any change in their abusive behaviors after participating in services. The DHHR argues that despite the Petitioners' argument that they are willing to participate in

_____

[7] We observe, however, that the therapist, Ms. Greathouse, was not called to corroborate this information at the hearing.

13

services, the Petitioners' attitudes toward parenting have not changed during their participation in services to this point. The DHHR asserts that although the Petitioners did not get a formal improvement period, they did receive services for a substantial period of time prior to the plan being filed, and they did have a service provider who testified to their "minimal progress." The DHHR also notes that the Petitioners previously had services in 2012 due to a similar incident of domestic violence toward the oldest son, M.M. The DHHR maintains that the circuit court did not err in denying the motions for improvement periods, as they are not automatically entitled to such, given the facts of this case.

The guardian ad litem likewise argues that no error occurred. The guardian ad litem contends that the Petitioners are not entitled to improvement periods, and their history of services without change demonstrates that the circuit court was correct to conclude that the Petitioners were not likely to participate in services now that would amount to parental improvement. In addition to their current "minimal progress" and 2012 domestic violence incident toward the oldest son, M.M., the circuit court also heard evidence that Petitioner Leslie S. lost custody of her children in Florida for five years due to a domestic incident there in the early 2000s. The guardian ad litem also asserts that Lora Davis, parent educator, provided testimony about her interactions with the Petitioners, including incidents where she believed that Leslie S. was either intoxicated or over-medicated and incidents demonstrative of Samuel S.'s anger issues. Her conclusion

14

was that despite many months of service, minimal progress, if any, was made in addressing the problems as she had to "explain things over and over again." She also indicated that there did not appear to be a genuine willingness to charge on the part of Samuel S.

West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period. This Court has emphatically stated that "[b]oth statutory and case law emphasize that a parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period. Where an improvement period would jeopardize the best interests of the child, for instance, an improvement period will not be granted." *In re Charity H*., 215 W. Va. 208, 216, 599 S.E.2d 631, 639 (2004). The parents bear the burden at the disposition stage to show that they should be granted the opportunity to remedy the circumstances that led to the filing of the abuse and neglect petition. West Virginia Code § 49-6-12(b) states, in pertinent part, that the circuit court *may* grant a respondent parent an improvement period if "[t]he respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period[.]" This Court has also held that in order to receive an improvement period, the parent must acknowledge that the children have been abused and neglected. *In re Kaitlyn P*., 225 W. Va. 123, 126, 690 S.E.2d 131, 134 (2010).

As this Court has explained, it is possible for an individual to show "compliance with specific aspects of the case plan" while failing "to improve . . . [t]he overall attitude and approach to parenting." *W. Va. Dept. of Human Serv. v. Peggy F.*, 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990). Fully participating in an improvement period necessarily requires implementing the parenting skills that are being taught through services. There is "no reasonable likelihood that conditions of abuse and neglect can be corrected" if

> the abusing parent or parents have not responded to or followed through with a reasonable family case plan or *other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child*, as evidenced by the continuation of insubstantial diminution of conditions which threatened the health, welfare or life of the child.

W. Va. Code § 49-6-5(b)(3) (2002) (Emphasis added).

We conclude that the circuit court did not err in denying the Petitioners' motions for improvement periods. The circuit court's order lists its consideration of several very relevant factors for its conclusion that the abusive situation was not easily correctable: 1) the history of past abuse of the children; 2) the testimony of both older boys detailing the major dysfunctional relationships and chaotic life at home; 3) the parent educator's testimony; 4) the psychological evaluations of the parents showed that the mother had a "guarded" prognosis and the step-father had a "very guarded" prognosis; and 5) the testimony of both the Petitioners, which allowed the Court to

16

evaluate their credibility. The records from the 2012 services that the Petitioners received were admitted as evidence. They show that the services were provided to help the Petitioners develop "appropriate parenting and disciplinary techniques due to inappropriate disciplinary techniques and possible mental health issues in the home." A review of the records in their totality demonstrates that the services were addressing the Petitioners' verbal and emotional abuse of the children, verbal altercations between the Petitioners, the Petitioners' favoritism of C.S., and Leslie S.'s inability to properly parent her children or function. These are the same issues of abuse and neglect to which the Petitioners admitted in this case.

> In its dispositional order, the circuit court noted that the Petitioners
>
> received in-home services, including parenting and adult life skills, for several months from Children's First, beginning in August, 2012. These services were arranged by DHHR, as a reasonable effort to prevent removal, after a prior incident involving [Leslie S.'s] physical abuse of [M.M.] Notwithstanding that the services had a goal of preventing this kind of abuse, not quite a year after the services ended did the same sort of physically abusive conduct happen with [C.S.] Moreover, a review of the Children's First records show that many of the problems identified by Lora Davis and those also reported in the psychological evaluations were present at the time Children's First worked with [the Petitioners], and the services were designed to address these problems and offer solutions. The whole goal of the Children's First services was to reduce and prevent further abuse of the children in the future by [the Petitioners], and prevent removal of the children from the home. Unfortunately, those mechanisms which should have been in place to prevent further abuse simply did not work and

17

another one of the children was injured, and these petitions were filed.

Taking all of this evidence into consideration, we conclude that the circuit court made a proper determination that the abusive situation was not easily correctable and was unlikely to improve. Accordingly, we affirm the circuit court's ruling on this basis.

Next, the Petitioners argue that the circuit court erred in failing to follow Rule 34 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings and this Court's opinions in *In re Ashton M.*, 228 W.Va. 584, 723 S.E.2d 409 (2012) and *In re Edward B.*, 210 W.Va. 621, 558 S.E.2d 620 (2001) by terminating their parental rights when the DHHR's case plan recommended improvement periods.[8] The Petitioners argue that under Rule 34, the circuit court should have 1) objected to the

---

[8] Rule 34 of the W. Va. Rules of Procedure for Abuse and Neglect Proceedings addresses the circuit court's options in ruling on objections to a child's case plan that are raised at the dispositional hearing. If an objection is raised at the disposition hearing, the rule directs the circuit court to

> [e]nter an order (a) Approving the plan; (b) Ordering compliance with all or part of the plan; (c) Modifying the plan in accordance with the evidence presented at the hearing; or (d) Rejecting the plan and ordering the Department to submit a revised plan within thirty (30) days. If the court rejects the child's case plan, the court shall schedule another disposition hearing within forty-five (45) days.

*Id.*

18

case plan, 2) ordered the DHHR and MDT to change the case plan, and 3) ordered another dispositional hearing to allow the parties an opportunity to refuse the lower court's findings. The Petitioners argue that this case is very similar to *Ashton M.*, in which a circuit court failed to follow the DHHR's recommendation in the case plan, and this Court held that the circuit court implicitly rejected that case plan under Rule 34 thereby requiring the scheduling of another dispositional hearing. 228 W.Va. 584, 723 S.E.2d 409. The Petitioners argue that failure to follow Rule 34's requirement to schedule another dispositional hearing for the DHHR to revise its case plan was reversible error.

Conversely, the DHHR argues that *Ashton M.* and *Edward B.* are entirely distinguishable from the instant case because, in those cases, the parents did not know that the case plan would be challenged prior to the dispositional hearing. In *Ashton M.*, the DHHR filed a case plan recommending termination of only the mother's custodial rights and all parties were in agreement with that. 228 W.Va. 584, 723 S.E.2d 409. The mother and her counsel did not know the agreed case plan would be challenged until the circuit court, sua sponte during the dispositional hearing, suggested that termination of all parental rights, rather than just custodial rights, would serve the child's best interests. *Id* at 587, 723 S.E.2d at 412. The mother's counsel objected saying the mother was not prepared to present witnesses to address the termination of all parental rights because she had relied on the agreement reached between the parties. *Id.* at 588, 723 S.E.2d at 413.

19

Thus, this Court determined that the circuit court committed reversible error in failing to follow Rule 34(d) and set a new dispositional hearing. *Id.* at 591, 723 S.E.2d at 416. The DHHR argues that similarly, in *Edward B.*, this Court held that the circuit court erred in failing to set a new dispositional hearing to allow the parties to present evidence of termination when it rejected the agreed case plan recommending an improvement period because there was no indication before the dispositional hearing that the case plan would be contested. 210 W. Va. 621, 558 S.E.2d 620. To the contrary, the DHHR contends that the Petitioners here knew that the guardian ad litem might object to improvement periods, and the guardian ad litem did in fact object.

We agree with the DHHR and find that the above noted cases are distinguishable from the instant case. In the case sub judice, unlike *Ashley M.* and *Edward B.*, Petitioners knew before the dispositional hearings began that the guardian ad litem herein might not agree with their motions for improvement periods. At the first dispositional hearing on September 5, 2014, Petitioner Leslie S.'s counsel discussed the purpose of the hearing with the circuit court and noted that "I know the Department's recommendation was, before at the MDT, that [it was] going to recommend an improvement period. I think the only one still up in the air is the guardian. And I am willing to put my client on to testify as to the services she's already started." The circuit court then inquired as to whether there was an objection to the Petitioners' motions for an improvement period, to which the guardian ad litem responded, "yes." Thus, in this case,

20

the Petitioners were aware prior to the hearing that the guardian ad litem might not be in agreement with their request for an improvement period, and the record is clear that because of that knowledge, the Petitioners were prepared to present their evidence regarding their motions.

Further, the circuit court permitted the Petitioners a full opportunity to present evidence at not one, but two, different evidentiary hearings where the parties had full notice of the issues to be considered by the circuit court and a full opportunity to present witnesses and to be heard regarding whether improvement periods should be granted or whether another disposition would be required. Furthermore, the record is also devoid of any objection by the Petitioners to either proceeding with the hearings or to the circuit court's request for proposed findings of fact and conclusions of law. Finally, the Petitioners do not now contend that they had additional witnesses or evidence to present or that they were prohibited from doing so.

In syllabus point five of *In re Edward B.*, this Court held that,

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been *substantially disregarded or frustrated*, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

21

210 W.Va. 621, 558 S.E.2d 620 (Emphasis added).  Based upon the set of facts before us, we conclude that in this particular case, the circuit court order did not substantially disregard or frustrate the disposition process recommendation as required by our holding in *In re Edward B.*

Our holding today comports with our long-standing jurisprudence that, while "[a]s a general rule the least restrictive alternative regarding parental rights to custody of a child under W. Va. Code, 49-6-5 (1977) will be employed; . . . courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened[.]" Syl. Pt. 1, in part, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980). Indeed,

> "'[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va. Code, 49–6–5 [1977] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va. Code, 49–6–5(b) [1977] that conditions of neglect or abuse can be substantially corrected." Syllabus Point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).' Syllabus point 4, *In re Jonathan P.*, 182 W.Va. 302, 387 S.E.2d 537 (1989).

Syl. Pt. 1, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993).

The evidence presented at the evidentiary hearings clearly supports the circuit court's determination that there was no reasonable likelihood that the Petitioners

22

could correct the conditions of abuse and neglect because they did not respond to rehabilitative efforts to correct the conditions of abuse and neglect and because the emotional abuse perpetrated on their children created a degree of family stress and potential for further abuse which precluded the use of further resources to resolve the family's problems. Based upon the evidence presented, we conclude that the circuit court did not err in terminating the Petitioners' parental and custodial rights.

## IV. CONCLUSION

For the foregoing reasons, we affirm the October 27, 2014, order of the Circuit Court of Roane County. It is further ordered that the mandate of this Court be issued forthwith.

**Affirmed.**

23