## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.B., J.B., and A.R.**

**No. 18-0819** (Cabell County 17-JA-89, 17-JA-90, and 17-JA-91)

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.R., by counsel Kerry A. Nessel, appeals the Circuit Court of Cabell County's August 16, 2018, order terminating her parental rights to M.B., J.B., and A.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Robert E. Wilkinson, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2017, the DHHR filed an abuse and neglect petition against petitioner and the father of M.B. and J.B., alleging that petitioner had influenza and tested positive for cocaine at the time of M.B.'s birth.[2] The child suffered from numerous complications at birth. The DHHR also alleged that the father was verbally abusive to hospital staff, refused to watch the children while at the hospital, and refused to take the children for influenza testing. According to the DHHR, petitioner admitted to a Child Protective Services ("CPS") worker that she smoked marijuana laced with cocaine while she was pregnant with M.B. The CPS worker visited the home after M.B.'s birth and reported that there were no supplies for the infant child. During the visit, petitioner told the CPS worker that she and the children slept on the one mattress in the home and that the father slept in a recliner.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]A.R.'s father was also named as an adult respondent in the petition and his parental rights were subsequently terminated in January of 2018 based upon his abandonment of the child.

1

Petitioner waived her preliminary hearing and subsequently stipulated to the allegations of abuse and neglect during the adjudicatory hearing on June 19, 2017. Accordingly, petitioner was adjudicated as an abusing parent and was granted a post-adjudicatory improvement period. In October of 2017, the father of M.B. and J.B. voluntarily relinquished his parental rights to the children. The circuit court ruled that he was to have no contact with petitioner or the children. During a review hearing in December of 2017, the circuit court found that petitioner was doing well in her post-adjudicatory improvement period and that it was appropriate for trial reunification to begin with J.B. and A.R. M.B. remained in a specialized foster home due to his medical issues. In April of 2018, the circuit court held a review hearing. The DHHR informed the circuit court that petitioner was in contact with the father, who was incarcerated, in violation of the no contact order.[3] The circuit court refused to extend petitioner's post-adjudicatory improvement period and approved the removal of J.B. and A.R. from petitioner's home. The matter was then scheduled for a final dispositional hearing.

On July 2, 2018, the circuit court held the dispositional hearing during which a DHHR worker testified that petitioner partially complied with her family case plan by participating in parenting education classes, complying with random drug screens, and maintaining stable housing. However, the DHHR worker testified that petitioner continued to have contact with the father during his incarceration. Evidence was presented that petitioner received 161 telephone calls from the father between January and April of 2018. Recordings of telephone calls between petitioner and the father revealed that they planned to reunite once the father was released from incarceration. Further, the DHHR worker testified that petitioner exposed the children to the father during the calls, including allowing the father to threaten the children, which violated the circuit court's no contact order. Finally, the DHHR worker testified that petitioner requested $3,000 from the DHHR to pay her electric bill, but used the money to send the father care packages during his incarceration. Evidence was also presented that petitioner was instructed to enroll in domestic violence counseling in January of 2018, but did not begin participating until April of 2018.

Next, petitioner testified that she made a mistake in accepting the father's telephone calls and admitted that he was verbally abusive. She also admitted to sending him a package while he was incarcerated, but did not accept any more telephone calls from him after the April of 2018 review hearing. Petitioner testified that, during the proceedings, she participated in parenting classes, counseling, and obtained housing for herself and the children. She admitted that she violated the circuit court's no contact order by accepting telephone calls from the father and allowing him to speak to the children. Following the presentation of testimony, the circuit court denied petitioner's motion for a post-dispositional improvement period. The guardian and the DHHR moved for the termination of petitioner's parental rights. In its dispositional order, the circuit court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. The circuit court specifically noted that while petitioner participated in her improvement period, "she testified that she did not get anything from the services provided and her actions show that she will endanger the children by reuniting

---

[3]It is unclear from the record when the father was incarcerated or for what charges he was incarcerated.

them with [the father], whose parental rights have been terminated." Based on the evidence presented, the circuit court also found that the welfare of the children necessitated the termination of petitioner's parental rights. Ultimately, the circuit court terminated petitioner's parental rights in its August 16, 2018, dispositional order.[4] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in denying her motion for a post-dispositional improvement period. In support, petitioner asserts that she complied with the terms and conditions of her post-adjudicatory improvement period and her family case plan. Additionally, she contends that she "acknowledged and admitted to the neglect throughout the lower [c]ourt proceedings." We do not find petitioner's argument persuasive.

West Virginia Code § 49-4-610(3)(D) provides that when a parent has previously been granted an improvement period, the parent must prove that "since the initial improvement period, the [parent] has experienced a substantial change in circumstances" and that "due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." Additionally, we have stated that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

Here, although petitioner partially complied with the terms and conditions of her post-adjudicatory improvement period and her family case plan, the record shows, based upon

---

[4]The father of M.B. and J.B. voluntarily relinquished his parental rights to the children. A.R.'s father's parental rights were terminated. M.B. is in a specialized foster placement due to his medical needs. J.B. and A.R. are placed together in a foster home. According to respondents, the permanency plan for the children is adoption in their respective foster homes.

petitioner's own testimony, that she did not benefit from services. Petitioner also repeatedly violated the circuit court's no contact order by accepting telephone calls from the father, during which she subjected the children to the father's threats. Additionally, the record shows that petitioner sent the father packages while he was incarcerated, but was unable to financially support the children. Furthermore, the circuit court found that petitioner's actions "show that she will endanger the children by reuniting them with [the father]." Moreover, petitioner did not provide evidence that she was likely to fully participate in a post-dispositional improvement period due to a change in circumstances and, therefore, she did not meet the applicable burden to receive one. As such, we find no error.

Next, petitioner argues that the circuit court erred in terminating her parental rights because she was denied an opportunity to "continue to correct her shortcomings as a parent." She alleges that she was "painted in an unfair light by the parties involved simply because she had a lapse in judgment by talking with her former husband on the telephone." We disagree.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. Further, West Virginia Code § 49-4-604(c) provides that a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Petitioner acknowledges that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). As discussed above, petitioner complied with some of the terms and conditions of her post-adjudicatory improvement period and family case plan, but maintained contact with the father in violation of the circuit court's order. Although she argues that once she realized her mistakes, she ceased all contact with the father, the record shows that petitioner had telephone contact with the father while he was incarcerated 161 times after the circuit court entered the no contact order. Additionally, she subjected the children to threats from the father and forced them to be present while she spoke to him on the telephone. Recordings of the telephone conversations indicated that petitioner and the father planned to reunite once the father was released from incarceration, despite the fact that he voluntarily relinquished his parental rights to the children. Further, petitioner sent the father packages while he was incarcerated, but asked the DHHR for financial assistance in paying utility bills. Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of her parental rights was in the children's best interests. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 16, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**:  March 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

5