**FILED**

**November 8, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 22-623 – *In re C.L., A.L.-1, A.L.-2, and A.L.-3.*

Armstead, Justice, concurring, in part, and dissenting, in part:

I dissent from the majority opinion's ruling reversing the termination of Petitioner Father's parental rights to A.L.-2 and A.L.-3 because it is clear that he has abandoned these two children. The circuit court set forth detailed findings of fact in support of its ruling terminating Petitioner Father's parental rights to A.L.-2 and A.L.-3 on the basis of abandonment. Because the evidence overwhelmingly supports the circuit court's ruling, I would have affirmed the circuit court's termination of Petitioner Father's parental rights to these two children.

A.L.-2 and A.L.-3 became part of this proceeding when the West Virginia Department of Health and Human Resources ("DHHR") filed a second amended petition on April 25, 2022. The second amended petition recites a number of potential ways that the children have been abused and neglected, including that they were "*abandoned.*" (Emphasis added).[1]

---

[1] While the record in this case clearly demonstrates that Petitioner Father was on notice that the allegation against him regarding A.L.-2 and A.L.-3 was abandonment, the second amended petition is lacking in a number of respects. It appears to largely be a form order that recites various forms of abuse and neglect, including abandonment. Further, the petition does not contain a significant factual description of the abandonment allegation. While I believe the circuit court properly terminated Petitioner Father's rights to A.L.-2 and A.L.-3 on the basis of abandonment, I strongly urge the DHHR in future abuse and neglect petitions to include detailed factual statements that are linked, specifically, to the alleged abuse and neglect.

1

On June 22, 2022, the circuit court held an adjudicatory hearing regarding A. L.-2 and A.L.-3. At the outset of this hearing, counsel for the State and for Petitioner Father agreed that the issue was whether Petitioner Father had abandoned A.L.-2 and A.L.-3.[2] During the adjudicatory hearing, the State called A.L.-2 and A.L.-3's mother, S.D. She testified that Petitioner Father had not seen the children in two years; that he had paid "less than half" of the child support that he owes; that the children, then ages eight and five, had no relationship with Petitioner Father; and that Petitioner Father only attempted to contact A.L.-2 and A.L.-3 around tax season so that he could claim them as dependents.

Petitioner Father was then called and disputed this testimony. He stated that he tried to call the children but that S.D. would not allow him to talk or visit with them. He also blamed his failure to visit these children on a lack of transportation, stating that he did not have a car during certain periods. When asked during cross-examination if he had attempted to go to court to get an order allowing him to contact or visit A.L.-2 and A.L.-3, Petitioner Father said no. Petitioner Father also testified that he did not know either child's birthday.

---

[2] Counsel for the State noted that "[w]e had continued the adjudication for the abandonment allegations against [Petitioner Father] as to [A.L.-2 and A.L.-3]," and that the State intended to call A.L.-2 and A.L.-3's mother, S.D., to address these allegations. Because the parties were initially concerned that S.D. may not have been present, counsel for Petitioner Father stated that "if we're going to do the adjudication, the only evidence [of] the abandonment would be for the mother [to testify]."

Following the testimony of S.D. and Petitioner Father, the circuit court adjudicated Petitioner Father of abusing and neglecting A.L.-2 and A.L.-3. The circuit court explained this ruling as follows:

> Father has not seen these children in at least two years. He has done nothing to petition the courts to gain access to his children and blamed it on lack of transportation; however, . . . at the inception of this case, [F]ather was living in a vehicle and had a vehicle and nevertheless he can -- he can always find a ride somewhere and, in fact, for six years he's found a ride or somehow had transportation all the way from where he lives to Charleston to McDonald's [his employer]. So[,] I don't give a lot of credibility to the excuse that he could not get any ride to the Courthouse to petition the courts. He doesn't know the birthdays of his children and has not provided them with any kind of emotional support or financial support. The only financial support is the Court ordered garnishment of his wages which he's also in arrears on and is failing to provide the full amount.

In the circuit court's subsequent adjudication order, it found that A.L.-2 and A.L.-3 were

> neglected children as defined in West Virginia Code Section 49-1-3(h) in that [their] physical or mental health is harmed or threatened by a present refusal, failure, or inability of the child's parent, guardian, or custodian to supply the child with the necessary food, clothing, shelter, supervision, medical care, or education, when such refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent, guardian, or custodian.

Additionally, the circuit court set forth five specific findings of fact in support of its conclusion that Petitioner Father was an abusing parent:

> 1. That Respondent Father has not seen Respondent Children for at least two years;

3

2. That Respondent Father has not made any effort to get access to Respondent Children;

3. That Respondent Father has made no effort to see Respondent Children;

4. That Respondent Father did not know the dates of birth of Respondent Children; and

5. That Respondent Father has provided no financial or emotional support for Respondent Children other than by garnishment of his wages.

The circuit court held a dispositional hearing regarding A.L.-2 and A.L.-3 on July 1, 2022. At the start of this hearing, counsel for the State noted that Petitioner Father had been adjudicated as "an abuseful and neglectful parent on the basis of abandonment." The circuit court, relying on the testimony from the adjudicatory hearing, found that "there was ample testimony that there has been abandonment in this case." The circuit court ruled that there was no reasonable likelihood that Petitioner Father could substantially correct the conditions of neglect in the near future, as he had made no effort to rectify the circumstances that led to the filing of the petition; that termination was in the best interests of A.L.-2 and A.L.-3; and that termination was the least restrictive alternative and would provide permanency for the children.

In the circuit court's subsequent dispositional order, it makes a clear finding of abandonment: "[T]here is ample evidence that [Petitioner] Father has abandoned these children [A.L.-2 and A.L.-3]." The court's dispositional order further provides that A.L.-2 and A.L.-3 "do not actually know or have a relationship with [Petitioner] Father; [and Petitioner] Father has not had contact with these children for several years[.]"

On appeal, Petitioner Father argues that the circuit court erred by terminating his parental rights. Regarding A.L.-2 and A.L.-3, Petitioner Father denied that he had abandoned these children and offered a number of excuses for his lack of contact with them. These excuses included his claim that he lacked transportation and that the children's mother, S.D., would not permit him to see A.L.-2 and A.L.-3. The circuit court found that Petitioner Father's testimony was not credible, noting that Petitioner Father has owned a car for at least some of the time period at issue. Further, S.D.'s testimony directly contradicted Petitioner Father's statement that she prevented him from seeing A.L.-2 and A.L.-3. This Court has held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). The circuit court cited logical and compelling reasons for finding that Petitioner Father's testimony was not credible.

Accordingly, I find that the circuit court had a sufficient basis for terminating Petitioner Father's parental rights to A.L.-2 and A.L.-3 based on abandonment. Therefore, I would reject Petitioner Father's claim that the circuit court erred by terminating his parental rights to A.L.-2 and A.L.-3.[3]

---

[3] Petitioner Father also claimed that the circuit court erred by denying his request for a post-adjudicatory improvement period as to A.L.-2 and A.L.-3. A circuit court may grant a parent a post-adjudicatory improvement period if "the [parent] demonstrates, by

(continued . . .)

In conclusion, the circuit court's ruling terminating Petitioner Father's parental rights to A.L.-2 and A.L.-3 was clearly supported by the evidence in the record and this ruling should have been affirmed by this Court. Therefore, I respectfully dissent from the majority opinion's ruling reversing the circuit court's order terminating Petitioner Father's parental rights to A.L.-2 and A.L.-3. I concur with the majority opinion's conclusion and analysis reversing the termination of Petitioner Father's rights to C.L. and A.L.-1.

---

clear and convincing evidence, that [he] is likely to fully participate in the improvement period." W. Va. Code § 49-4-610(2)(B). Further, "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). This Court has directly addressed a parent's request for an improvement period after a circuit court has made a finding of abandonment. In syllabus point two of *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991), this Court held that "[a]bandonment of a child by a parent constitutes compelling circumstances sufficient to justify the denial of an improvement period." The Court in *James M.* noted that the father in that case

> did not actually visit or have any contact with his children [for] almost two years after he left them. Further, during this two-year absence from his children's lives, he made no effort whatsoever to lend any financial or emotional support. It is difficult to perceive a more compelling set of circumstances to justify the denial of an improvement period.

*Id.* at 655, 408 S.E.2d at 407.

As in *James M.*, the circuit court found that Petitioner Father has not seen A.L.-2 and A.L.-3 in over two years. He has made no effort to gain access to them, nor has he offered them any emotional support. Thus, like in *James M.*, I find it hard to perceive of a more compelling case of abandonment that clearly justifies the circuit court's denial of an improvement period. Therefore, it is clear that the circuit court did not abuse its discretion in denying Petitioner Father's motion for a post-adjudicatory improvement period.

6