**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.C.**

**No. 25-130** (Preston County CC-39-2024-JA-27)

## MEMORANDUM DECISION

Petitioner Mother C.H.[1] appeals the Circuit Court of Preston County's January 21, 2025, order terminating her parental rights to J.C., arguing that the court erred in denying her motion for a post-adjudicatory improvement period and in terminating her parental rights instead of imposing a less-restrictive alternative.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in April 2024, alleging that the petitioner exposed the child to domestic violence and a registered sex offender. The DHS also alleged that the petitioner had a history of mental instability and was involved in two prior child abuse and neglect proceedings, the first in Maryland and the second in West Virginia. The Maryland proceedings resulted in the petitioner losing her custodial rights, but not her parental rights, to three children after the petitioner failed to fully participate in visitation and other services. The petitioner consented to the adoption of two of the children, while the third child remained in the state of Maryland's custody and was also expected to be adopted. The prior West Virginia proceedings were initiated in February 2022 and involved both the petitioner and J.C. The DHS alleged that the petitioner was adjudicated of abusing and neglecting J.C. during those proceedings, but was ultimately reunified with the child in January 2024. However, the DHS asserted that the petitioner failed to remediate the circumstances leading to the prior removal of J.C. following the petitioner's reunification with the child. The DHS filed an amended petition on May 8, 2024, alleging that the petitioner was criminally charged with domestic battery against one of the children involved in the Maryland proceedings.[3]

---

[1] The petitioner appears by counsel Jeremy B. Cooper. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Katica Ribel. Counsel Clarissa M. Banks appears as the child's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The petitioner's other child was not subject to the underlying abuse and neglect petition and is not at issue on appeal.

1

The petitioner waived her right to a preliminary hearing, and the circuit court held an adjudicatory hearing on May 22, 2024. The petitioner stipulated that she abused and neglected J.C. by exposing the child to domestic violence and by knowingly exposing the child to a registered sex offender. Following a colloquy, the court accepted the petitioner's stipulation and adjudicated her as an abusive and neglectful parent and J.C. as an abused and neglected child. At a hearing in August 2024, the petitioner moved for a post-adjudicatory improvement period. In denying the petitioner's motion, the court noted that the petitioner had completed multiple evaluations in her prior West Virginia proceedings and stated that it did "not believe that there are further services that could be provided at this time that [the petitioner] has not already completed."

The court held a series of dispositional hearings between October and December 2024. At the outset, the petitioner renewed her motion for a post-adjudicatory improvement period. In support of her motion, the petitioner relied upon a supplemental dispositional report filed by the guardian a week before the first hearing, which recommended that the petitioner participate in services including therapy, parenting classes, and job skills. In making this recommendation, the guardian stated that there were no aggravated circumstances, that the petitioner voluntarily stipulated to the abuse and neglect allegations and expressed a willingness to participate in services, that the petitioner had previously completed services in the prior West Virginia proceedings, and that the DHS was obligated to provide services to the petitioner. The report also indicated that, in the prior West Virginia proceedings, the petitioner had been compliant with services including parenting and adult life skills classes, counseling, supervised visitation, and drug screening. However, the report stated that the guardian did not believe it to be in J.C.'s best interests to be returned to the petitioner's care if the court denied the petitioner's motion for an improvement period. The DHS objected to granting the petitioner a post-adjudicatory improvement period, indicating that there were no services that would be effective given the allegations against the petitioner and the short duration between the petitioner's reunification with the child and the new allegations. The court held the petitioner's motion in abeyance to allow for further evidence to be presented.

Over the course of four hearings, the DHS presented evidence of the petitioner's psychological evaluations from the prior West Virginia proceedings, which indicated that the petitioner would continue to engage in inappropriate conduct and inappropriate relationships in the absence of supervision by the court and Child Protective Services ("CPS"). The final evaluation indicated that the petitioner had previously exposed her older children to domestic violence, substance abuse, and unstable living conditions, and that J.C. was removed from the petitioner's care due to her substance abuse and her refusal to cooperate with hospital personnel in providing care to the child in the hospital. The forensic psychologist who had conducted the final evaluation testified that the petitioner had claimed "that she had taken at least six parenting classes, a class in anger management and had complied with everything Maryland CPS asked her to do." The psychologist further testified that the petitioner was insincere in her acceptance of responsibility based on her history.

The DHS also presented evidence that the petitioner continually minimized her own actions and placed the blame for J.C.'s removal on her other child—the other party involved in the domestic violence. A Maryland CPS worker testified that the petitioner exposed J.C. to a sex

offender, L.L., who attempted to inform the petitioner of his sex offender status when they first met, but that the petitioner claimed that "she was busy and . . . didn't remember." The court also heard testimony from the petitioner that she met L.L. in late 2023 but stated that she did not know he was a sex offender until March 2024. Although the petitioner claimed that she cut off all contact with L.L. upon learning of his sex offender status, she admitted to having further contact with him to store guns and have an Easter egg hunt for the child at his home and that he was at her home at the time of the child's removal. Further, the petitioner acknowledged that, due to the prior abuse and neglect proceedings, she had been the child's primary caregiver for only four months of the then thirty-four-month-old child's life. Following this, a CPS worker testified that the petitioner was provided with numerous services in the prior proceedings and that there were no additional services that the DHS could provide to correct the petitioner's parenting deficiencies.

Based upon the evidence presented, the court entered an order denying the petitioner's motion for a post-adjudicatory improvement period and terminating her parental rights to J.C. The circuit court found that, in the prior proceedings, the petitioner was granted services during a preadjudicatory improvement period, which she had not completed, and a post-adjudicatory improvement period, and had participated in three separate psychological evaluations over the course of one year. The court also found that the petitioner had knowledge of L.L.'s sex offender status since approximately December 2023 but had not disclosed her contact with L.L. to the court, her parole officer, or CPS despite having numerous opportunities to do so. Further, the court found that the petitioner had continued to expose the child to L.L. even after the time which the petitioner claimed that she was made aware of L.L.'s sex offender status. The court made additional findings that the petitioner continued to minimize her own involvement and responsibility for the removal of J.C. and that she demonstrated an inadequate capacity to solve the problems of abuse and neglect on her own or with help. Based upon these findings, the court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future due to the petitioner's failure to improve her parenting even after being provided with services in the prior case, which demonstrated an inadequate capacity to solve the problems on her own or with help. The court also concluded that termination of the petitioner's parental rights was necessary for the welfare of the child. Accordingly, the court entered an order terminating the petitioner's parental rights to J.C.[4] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period. We disagree. Under West Virginia Code § 49-4-610(2)(B), a parent seeking a post-adjudicatory improvement period must "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." However, "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). In the present matter, the circuit court was presented with evidence that the petitioner had been provided extensive services over the course of two years in

---

[4] The father's parental rights were also terminated. The permanency plan for J.C. is adoption in the current placement.

a prior abuse and neglect proceeding, which concluded less than four months prior to the initiation of the instant matter. Despite these services, the petitioner engaged in domestic violence in J.C.'s presence and knowingly exposed the child to a registered sex offender, necessitating these proceedings. As such, we cannot conclude that the circuit court abused its discretion in denying the petitioner's motion for a post-adjudicatory improvement period.[5]

The petitioner also argues that the circuit court erred in terminating her parental rights instead of imposing a less restrictive alternative. However, this Court has previously held that termination of parental rights "may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that the conditions of neglect or abuse and be substantially corrected." Syl. Pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). West Virginia Code § 49-4-604(d) provides that "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Here, the court was presented with evidence that, despite having recently completed services in another abuse and neglect proceeding, the petitioner engaged in conduct that exposed J.C. to domestic violence and a registered sex offender within a few months of reunification and that she would likely engage in further inappropriate conduct once she was no longer under the scrutiny of the court and CPS. Further, while the petitioner stipulated to the allegations of abuse and neglect, the record supports the circuit court's finding that the petitioner consistently minimized her own culpability. While the petitioner takes issue with the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected without granting her additional services, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *In re Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, Syl. Pt. 4, in part. Moreover, the circuit court found that termination was necessary for the child's welfare, which the petitioner does not challenge. Circuit courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6). As such, we conclude that the circuit court did not err in terminating the petitioner's parental rights.

---

[5] In further support of her argument on this basis, the petitioner argues that the circuit court improperly "withheld services" in the absence of any aggravated circumstances. However, in doing so, the petitioner conflates the DHS's obligation to make reasonable efforts with the court's ability to grant an improvement period if it saw fit. *See* W. Va. Code § 49-4-604(c)(7) (absolving the DHS of its responsibility to "make reasonable efforts to preserve the family" in certain circumstances not present in the current matter); *see also In re Emily*, 208 W. Va. 325, 336, 540 S.E.2d 542, 553 (2000) ("[A] parent charged with abuse and/or neglect is not unconditionally entitled to an improvement period."). Further, while the record shows that the circuit court repeatedly found that the DHS was making reasonable efforts, it contains no evidence that the petitioner challenged these findings or otherwise brought any alleged deficiency by the DHS to the court's attention. Given that Rule 10(c)(7) of the Rules of Appellate Procedure permits this Court to "disregard errors that are not adequately supported by specific references to the record on appeal," we refuse to address this argument.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 21, 2025, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: January 29, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III