# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **K.P.-1.**

**No. 17-0918** (Nicholas County 17-JA-7)

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother, K.P.-2, by counsel Denise N. Pettijohn, appeals the Circuit Court of Nicholas County's September 6, 2017, order terminating her parental rights to K.P.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Amber R. Hinkle, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in (1) denying her motion for a post-adjudicatory improvement period; (2) finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future; and (3) finding that the length of time necessary for petitioner to correct the conditions of abuse and neglect would have a negative impact on the child.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 24, 2017, the DHHR filed a petition alleging that the infant, K.P.-1, tested positive for methamphetamine at birth and that petitioner tested positive for opiates. The DHHR alleged that petitioner voluntarily relinquished her parental rights to two older children due to her drug addiction issues and that petitioner had received services including parenting and adult life skills, drug screens, and inpatient drug rehabilitation, which were unsuccessful. In the instant case, petitioner waived her preliminary hearing. On March 2, 2017, the circuit court held an adjudicatory hearing wherein petitioner stipulated that her substance abuse issues impaired her ability to care for the child and was adjudicated as an abusing parent. She moved for a post-

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner have the same initials, they will be referred to as K.P.-1 and K.P.-2, respectively, throughout this memorandum decision.

1

adjudicatory improvement period and her motion was held in abeyance until the dispositional hearing.

On April 20, 2017, the circuit court held a dispositional hearing wherein a psychologist testified that petitioner was unlikely to be able to parent effectively. He further stated that no services or interventions could reasonably be expected to improve petitioner's parenting within a reasonable amount of time. A child protective services ("CPS") worker testified that in the prior abuse and neglect case, petitioner received numerous services, including long-term drug rehabilitation, which petitioner failed to complete. According to the CPS worker, petitioner began another rehabilitation program in June of 2015, which she also failed to complete.

On May 3, 2017, the circuit court held a dispositional hearing wherein petitioner testified that she was participating in a residential drug treatment program. She further testified that she had been in that same program before, but did not complete it. In total, petitioner entered four drug treatment programs and completed none of them. She also testified she voluntarily relinquished her parental rights to two children in 2016 due to her drug abuse issues and relinquished guardianship of two other children for "personal reasons," referring to her involvement in operating a methamphetamine laboratory that ultimately led to her incarceration in 2011. Petitioner also admitted that she abused drugs throughout her pregnancy with K.P.-1. The circuit court continued the dispositional hearing to give petitioner an opportunity to obtain documentation from the drug treatment program. On June 21, 2017, the circuit court held a dispositional hearing at which the founder of the residential drug treatment program testified that he believed petitioner was making progress in her treatment and that she had been sober for nearly sixty days. He further testified that she was six months away from completing the program. The circuit court continued the dispositional hearing for further evidence.

On July 25, 2017, the circuit court concluded the dispositional hearing. A psychologist testified that he received updated information from petitioner's treatment program, but maintained that petitioner's prognosis for improvement remained "non-existent." He explained that petitioner would require months of additional treatment after her discharge from residential treatment and estimated that petitioner may be successful with treatment after approximately twenty months. The psychologist further explained that the child would be harmed if the circuit court were to wait for the possibility of petitioner achieving rehabilitative success and obtaining effective parenting skills. A different psychologist testified that petitioner has never managed responsibilities of employment, a home, or children and further explained that there was "almost no basis in [petitioner's] background for her ever having established herself as a capable adult, much less a parent." Based upon the evidence presented, the circuit court found that due to the unlikelihood of petitioner successfully addressing the conditions and circumstances of abuse and neglect, and the long period of time it would take for said circumstances and conditions to be successfully addressed, it could be harmful to permit the infant, who is less than one year old, to establish a relationship with petitioner. Further, the circuit court found that it was in the best interests of the child to achieve permanency. Ultimately, the circuit court denied petitioner's

2

motion for a post-adjudicatory improvement period and terminated petitioner's parental rights in its September 6, 2017, order.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory improvement period because she was successfully participating in a drug treatment program. West Virginia Code § 49-4-610(2)(B) provides that in order to be granted a post-adjudicatory improvement period, the parent must "demonstrate[ ], by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have also held that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

Although petitioner and the founder of her treatment program testified that petitioner was, at the time of the dispositional hearing, successfully participating in her drug abuse treatment program and sober for sixty days, the evidence shows that petitioner was never successful in completing treatment, despite entering programs four different times. Each time she left a treatment program, she began abusing drugs again, and continued to abuse drugs throughout her pregnancy with K.P.-1. Further, petitioner failed to benefit from services that were offered to her as a result of an abuse and neglect case involving two of her older children. Petitioner voluntarily relinquished her parental rights to the two children due to her continued drug abuse. Based on this evidence, petitioner did not meet the applicable burden to be granted a post-adjudicatory improvement period. Therefore, we find the circuit court did not abuse its discretion in denying petitioner's motion for a post-adjudicatory improvement period.

---

[2]The father's parental rights were also terminated below. According to the guardian and the DHHR, the child is placed in foster care with her siblings and the permanency plan for the child is adoption in that home.

3

Next, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that she could correct the conditions of abuse and neglect in the near future. Petitioner further argues that pursuant to West Virginia Code § 49-4-605,[3] the DHHR should not have moved for termination of her parental rights because, if she successfully completed drug treatment in December of 2017, she would "still have five more months before the mandatory requirements of section 49-4-605 were triggered." However, petitioner fails to recognize that the statute simply mandates circumstances in which the DHHR is required to seek termination and does not prevent the DHHR from moving to terminate parental rights before the child has been in foster care for fifteen months.

West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

As discussed above, petitioner had a history of substance abuse which led her to enter, but fail to complete, drug treatment programs four times prior to these proceedings. At the time of the dispositional hearing, petitioner was six months away from completing her treatment program. If she completed the program, there is no evidence that petitioner could support herself and her child, as she has never been able to support herself or children. Prior to this case, petitioner voluntarily relinquished her parental rights to two children and her guardianship rights to two other children. According to the psychologist, petitioner's prognosis for improvement was "non-existent." Due to her poor prognosis for improvement, the circuit court found it necessary to establish permanency for the child, rather than delay disposition of the proceedings to wait for petitioner's possible rehabilitative success. Therefore, we find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and terminating petitioner's parental rights.

Finally, petitioner argues that the circuit court erred in finding that the length of time necessary for petitioner to correct the conditions of abuse and neglect would have a negative impact on the child. Petitioner again argues that under West Virginia Code § 49-4-605(a)(1), the DHHR should not have moved to terminate petitioner's parental rights. However, as discussed above, that statute does not apply here. Petitioner further asserts that the estimated twenty months for petitioner to achieve rehabilitative success is an "impossible standard." We disagree.

We have held that

"[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be

---

[3] West Virginia Code § 49-4-605(a)(1) provides that

the department shall file or join in a petition or otherwise seek a ruling in any pending proceeding to terminate parental rights: (1) If a child has been in foster care for fifteen of the most recent twenty-two months as determined by the earlier of the date of the first judicial finding that the child is subjected to abuse or neglect or the date which is sixty days after the child is removed from the home.

4

seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 4, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). A psychologist testified at the dispositional hearing that it was not possible for petitioner to acquire the skills necessary to effectively parent her child. Further, even if petitioner successfully completed her treatment program, her child would have been in foster care for the first year of her life and the circuit court found that it was in the child's best interests to achieve permanency in a foster home with her siblings. We have further held that, "[i]n making the final disposition in a child abuse and neglect proceeding . . . [t]he controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). Here, the circuit court found that due to the unlikelihood of petitioner to succeed in treatment and to address the issues of abuse and neglect, termination of petitioner's parental rights was in the child's best interests and we agree.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 6, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: March 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker