STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**May 24, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **K.H.-1, K.H.-2, W.H., B.H., and A.H.-1**

**No. 18-1116** (Harrison County 17-JA-142-1, 17-JA-143-1, 17-JA-144-1, 17-JA-145-1, and 17-JA-146-1)

**MEMORANDUM DECISION**

Petitioner Mother A.H.-2, by counsel Jason M. Glass, appeals the Circuit Court of Harrison County's November 16, 2018, order terminating her parental rights to K.H.-1, K.H.-2, W.H., B.H., and A.H.-1[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Dreama D. Sinkkanen, filed a response on behalf of the children, also in support of the circuit court's order. The guardian ad litem ("guardian") for petitioner, Allison S. McClure, filed a response on behalf of petitioner, also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her request for an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The DHHR filed a child abuse and neglect petition against petitioner and the father in October of 2017 after conducting a lengthy investigation regarding conditions in the home. The

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, we will refer to them as K.H.-1 and K.H.-2, respectively, throughout this memorandum decision. Further, because one of the children and petitioner share the same initials, we will refer to them as A.H.-1 and A.H.-2, respectively.

DHHR alleged that the family lost their home and placed the children with relatives around August of 2017. Thereafter, petitioner failed to participate in the children's lives for several weeks. At the end of August of 2017, the DHHR received a referral that K.H.-2 called a family friend, crying and scared. K.H.-2 reported that petitioner was "acting crazy and that the police were coming to take everyone away." A Child Protective Services ("CPS") worker visited the home and spoke to the children. K.H.-1 and K.H.-2 reported that their father was violent, their parents did not provide food for them to eat, and their parents spent large amounts of time in a shed on their property. The children also reported that petitioner's behavior was scary and unpredictable and that she was using drugs. The worker made initial contact with the parents that day, but was unable to locate them throughout September and October of 2017. Further, in October of 2017, petitioner stole a vehicle, with A.H.-1 as a passenger, and was subsequently arrested for grand larceny. The DHHR concluded that petitioner had a history of domestic violence, failed to adequately supervise the children, subjected the children to unsafe conditions including drugs, and subjected the children to psychological and emotional abuse, among other things.

Shortly after the preliminary hearing, the DHHR set up services for petitioner, including random drug screens, a forensic parenting evaluation, a drug and alcohol assessment, supervised visitation, individualized parenting and adult life skills classes, and therapy. Petitioner submitted to four drug screens and tested positive for several substances each time, including amphetamine, methamphetamine, buprenorphine, opiates, oxymorphone, and benzodiazepines. In January of 2018, petitioner also submitted to a psychological evaluation, which had to be continued due to the psychologist's concerns that petitioner was exhibiting substance-induced psychosis or paranoia. The psychologist recommended that petitioner be granted her own guardian, and the circuit court complied with that request.

The circuit court held an adjudicatory hearing in February of 2018. Petitioner failed to attend but was represented by counsel, who moved the court to continue the hearing based upon petitioner's nonappearance. The circuit court denied the motion due to petitioner's failure to attend several appointments with service providers and continued to hear evidence on adjudication. After hearing evidence, the circuit court adjudicated petitioner as an abusing parent based upon her issues with substance abuse, domestic violence, and her general failure to provide for the children.

In September of 2018, the circuit court held a dispositional hearing. The DHHR presented the testimony of several witnesses, including the evaluating psychologist, police officers, and a CPS worker. The police officers testified that petitioner had recently been arrested in August of 2018 after a traffic stop revealed petitioner in possession of a large amount of cash divided into increments, a pill fob containing controlled substances, a hollowed-out marker which contained two bags of a substance that field-tested positive for methamphetamine, and a drug ledger. Petitioner was arrested and interviewed, during which she claimed that she was working for a federal agency that would "give her drugs to test to make sure they were not killing people." Further, petitioner stated that she and her husband were using methamphetamine and were learning how to package and sell the substance.

The evaluating psychologist testified that petitioner presented for two evaluations in January and May of 2018. At the first evaluation, the psychologist became concerned about petitioner's presentation and disorientation after she appeared intoxicated, unable to fill out the questionnaires, and unable to complete some testing instruments. Moreover, petitioner wandered through the office and began stacking and unstacking items and folding paperwork. The psychologist noted that the father reported that they engaged in daily methamphetamine use, although petitioner denied this report. At the rescheduled evaluation held in May of 2018, petitioner appeared sober but continued to demonstrate bizarre and paranoid behavior. Given her drug use, the psychologist was unable to ascertain whether petitioner's presentation was due solely to a substance-induced disorder or whether there was some underlying psychotic process in addition to her substance abuse. Either way, the psychologist opined that petitioner exhibited psychosis and a schizoaffective-type disorder and concluded that she lacked the ability to care for her children.

The CPS worker testified that the DHHR was recommending termination of petitioner's parental rights given her severe substance abuse and failure to participate in any services designed to reduce or prevent the circumstances of abuse to the children. Petitioner only submitted to four drug screens and tested positive for a myriad of substances at each screen. Thereafter, she ceased submitting to drug screens, resulting in her inability to visit with the children. Further, petitioner only attended two individualized parenting and adult life skills classes, failed to attend her drug and alcohol assessment, and did not submit to treatment for her mental illness.

Petitioner requested an improvement period and testified that she would comply with the terms and conditions of the same. However, despite evidence of her four positive drug screens, petitioner testified that she did not have a drug problem and "[did]n't exactly know what [methamphetamine] is." When asked whether her husband's prior testimony regarding her drug use was false, petitioner responded "no comment." Moreover, petitioner admitted that she had not attended several services, but blamed her husband's disorganization for her failure to participate. After hearing evidence, the circuit court denied petitioner's request for an improvement period and terminated her parental rights. In making its findings, the circuit court determined that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future given her unaddressed mental health issues and drug addiction, and further concluded that the children's welfare required termination of petitioner's parental rights. It is from the November 16, 2018, dispositional order that petitioner appeals.[2]

The Court has previously established the following standard of review:

---

[2]The father's parental rights to the children were also terminated below. The permanency plan for K.H.-1 is guardianship with a concurrent plan of independent living given that he will reach the age of majority this year. K.H.-2 is placed with a family friend with a permanency plan of guardianship. W.H., B.H., and A.H.-1 are placed together in a kinship placement with a permanency plan of adoption therein.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T*., 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in denying her request for a post-adjudicatory improvement period. According to petitioner, she presented evidence regarding her willingness to participate in future services by testifying that she would complete drug screens, parenting classes, substance abuse treatment, and adult life skills classes. She avers that "because [she] showed a willingness to participate in services moving forward, she showed by clear and convincing evidence that she was likely to fully participate in an improvement period." We disagree.

Pursuant to West Virginia Code § 49-4-610, a circuit court may grant an improvement period when the parent "files a written motion requesting the improvement period" and "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . .").

Here, petitioner failed to demonstrate that she was likely to fully participate in an improvement period. Despite not having been granted a formal improvement period, petitioner was given several services such as psychological evaluations, random drug screens, supervised visitation with her children, parenting and adult life skills, and a drug and alcohol assessment. However, petitioner failed to participate in nearly every service she was provided. While petitioner initially submitted to drug screens, she tested positive for a myriad of substances each of the four times she submitted. Thereafter, petitioner ceased submitting to drug screens and, as a result, was unable to visit with her children. Further, petitioner failed to submit to her drug and alcohol assessment, which was rescheduled several times for her benefit. Given petitioner's failure to comply with any services granted to her, we find no error in the circuit court's decision to deny her an improvement period as it was not likely that she would fully participate in the same.

Petitioner next argues that the circuit court erred in terminating her parental rights.[3] According to petitioner, she shared an extremely close bond with her children and should have been granted disposition pursuant to West Virginia Code § 49-4-604(b)(5).[4] Having reviewed the record, we find no merit in petitioner's arguments.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. According to West Virginia Code § 49-4-604(c)(1), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . ha[s] habitually abused or [is] addicted to . . . controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person . . . ha[s] not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

Moreover, West Virginia Code § 49-4-604(c)(3) sets forth another situation wherein the parent has

> not responded to . . . a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

Here, petitioner remained addicted to drugs such that her parenting skills were seriously impaired and failed to participate in any aspect of the proceedings below. The record demonstrates that petitioner abused methamphetamine on a nearly daily basis during the underlying proceedings. Petitioner failed to attend her drug and alcohol assessment and tested positive for several substances on the four occasions she complied with random drug screens.

---

[3]Petitioner appears to suggest that the circuit court erred in terminating her parental rights based upon her incarceration. However, the record is unclear whether petitioner was incarcerated at the time of her dispositional hearing. Indeed, the circuit court does not mention any incarceration in making its findings regarding termination and clearly sets forth several other reasons, as discussed more fully above, for terminating petitioner's parental rights. Accordingly, we find that she is entitled to no relief in this regard.

[4]Pursuant to West Virginia § 49-4-604(b)(5), the circuit court may "commit the child temporarily to the care, custody, and control of the state department, a licensed private child welfare agency, or a suitable person" upon finding that the parent is "presently unwilling or unable to provide adequately for the child's needs."

Despite her claims of an extremely close bond with her children, petitioner ceased participating in drug screens after December of 2017, which meant that that she had no further visitation with her children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. at 90 n.14, 479 S.E.2d at 600 n.14 (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Further, petitioner was arrested mere weeks before the dispositional hearing and admitted to not only abusing methamphetamine, but also learning how to package and sell the drug as well. Despite this testimony, petitioner denied having a drug abuse problem at the dispositional hearing.

Additionally, petitioner failed to meaningfully participate in any other services offered by the DHHR and blamed others for her lack of participation. Petitioner attended only two parenting and adult life skills classes. While petitioner did attend two psychological evaluations, she exhibited bizarre, paranoid behavior and was unable to complete any testing. Petitioner appeared disoriented and out of touch with reality, as she had previously claimed to be testing methamphetamine for safe street consumption under the direction of a federal agency. Her behavior was such that petitioner's own guardian recommended termination of petitioner's parental rights given her inability to voluntarily acknowledge her drug abuse or mental illness and submit to treatment for the same. Based on the foregoing, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, we find no error in the circuit court's decision to terminate petitioner's parental rights rather than grant her disposition pursuant to West Virginia Code § 49-4-604(b)(5).

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 16, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: May 24, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison