**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 16, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **A.W. III and A.B.-1**

**No. 20-0648** (Ohio County 19-CJA-65 and 19-CJA-66)

**MEMORANDUM DECISION**

Petitioner Mother A.B.-2, by counsel Tyler L. Cline, appeals the Circuit Court of Ohio County's July 24, 2020, order terminating her parental rights to A.W. III and A.B.-1[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Joseph J. Moses, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her request for a post-dispositional improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner's substance abuse negatively impacted her ability to parent and that she repeatedly engaged in domestic violence in the presence of the children. Specifically, the DHHR alleged that in January of 2019, petitioner's live-in boyfriend, D.H., attacked petitioner in the presence of the children, resulting in his arrest and the involvement of Child Protective Services ("CPS"). Despite D.H.'s bond condition to avoid petitioner and the children and CPS's request to keep D.H. away from the home, petitioner allowed D.H. to return to the home and deliberately hid D.H.'s presence from CPS workers during home visits. The DHHR further alleged that petitioner failed to provide stable

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because one child and petitioner share the same initials, they will be referred to as A.B.-1 and A.B.-2 throughout this memorandum decision.

1

housing to the children after the family failed to pay rent, became homeless and began living in a tent in a local park in March of 2019. According to the DHHR, petitioner left the children in the care of inappropriate people, including strangers and others who abuse drugs and have CPS histories. Finally, the DHHR alleged educational, nutritional, and medical neglect of the children due to A.W. III's extreme truancy, the lack of food in the home, and A.B.-1's untreated broken hip—an unexplained injury that occurred while in petitioner's custody. Thereafter, petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in May of 2019, wherein petitioner stipulated to the allegations in the petition. The circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent. The circuit court also granted petitioner a post-adjudicatory improvement period in June of 2019, the terms of which included the following: maintain sobriety, no fraternizing with drug and alcohol abusers, no contact with D.H., obtain drug treatment, attend therapy and address mental health issues, maintain housing and employment, complete adult life skills and parenting sessions, and participate in supervised visitations. In July of 2019, petitioner completed a psychological examination of parental fitness. The report reflected petitioner's admission to abusing methamphetamine in March of 2019 and addiction to opiates after a surgery in 2018, yet petitioner stated that her drug problems were "not at all serious" and that it was "not at all important" that she seek drug treatment. According to the evaluator, petitioner lacked the "parental capacity to care, protect, and change in order to provide adequately" for the children.

Petitioner moved for a post-dispositional improvement period in late June of 2020. Prior to the dispositional hearing, the guardian submitted a report recommending the termination of petitioner's parental rights due to her failure to fully complete the terms of her post-adjudicatory improvement period. In support, the guardian stated that petitioner had failed to submit to drug screens since November of 2019, had inconsistent visitation with the children, and had not completed parenting and adult life skills classes. Due to petitioner's inappropriate language with the children and her inconsistent visitations, supervised visitations were suspended in March of 2020. According to the guardian, petitioner obtained new counsel who attempted to enroll petitioner into family treatment court, but her application was declined.

In June of 2020, the circuit court held a dispositional hearing wherein petitioner failed to appear, but counsel represented her. A parenting service provider testified that during May and June of 2019 petitioner did not make progress in her parenting as she could not discipline and control the children. Another parenting service provider testified that from July to September of 2019, petitioner was difficult to schedule sessions with and she would often fall asleep during sessions, resulting in sessions ending early. According to the service provider, after three months of parenting and adult life skills sessions, petitioner had not achieved all of the goals. Although petitioner completed early and middle childhood parenting sessions, she missed seven sessions in December of 2019 and January of 2020, and cancelled two parenting sessions in February of 2020. The DHHR worker testified that at a multidisciplinary team meeting in October of 2019, she explained that petitioner had not completed all of the sessions for parenting and adult life skills and that she offered petitioner bus passes and other forms of transportation, but petitioner declined. Also, the DHHR presented evidence that petitioner cancelled eight supervised visitations with the children in January of 2020 and continued to be inconsistent with visitation, which resulted in the suspension of her supervised visitations in March of 2020.

The DHHR submitted petitioner's drug screen results, which showed that she tested positive for various substances including opiates in May, June, July, September, October, and November of 2019 with fourteen "no shows" for drug screening during that time. The submitted results also showed that petitioner completely ceased reporting for drug screening after November of 2019, resulting in fifty-five missed drug screens. The DHHR also presented evidence that petitioner went to emergency rooms several times throughout the proceedings to obtain narcotics but did not follow up with appointments or recommendations for care. Specifically, in October of 2019, petitioner presented to an emergency room demanding pain medication while swearing at a nurse. Additionally, the DHHR worker stated that petitioner violated the terms of her improvement period by having a "close relationship" with a man who had a history of drug use, drug possession, driving while impaired, and driving without a license. Lastly, the DHHR worker testified that petitioner had not participated in any form of drug treatment and did not cooperate in a doctor's visit concerning A.B.-1's care after hip surgery.

Petitioner's therapist testified that although petitioner attended most sessions and discussed issues of drug abuse, petitioner was not truthful about her active drug use, her failure to report for drug screens, and her fraternization with a known drug abuser. In the opinion of the therapist, petitioner had not made improvements with her substance abuse through therapy sessions.

The circuit court found that although petitioner participated in some services, including parenting classes and attending therapy sessions, she "did not fully participate in all services." The circuit court noted that petitioner made minimal progress in therapy to address her substance abuse issues, which was a concern in light of her positive drug screens during the months that she submitted to testing. Ultimately, the circuit court found that petitioner was unlikely to fully participate in a post-dispositional improvement period given her failure to comply with the terms of her post-adjudicatory improvement period. The circuit court concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that it was in the best interest of the children to terminate petitioner's parental rights. The circuit court's July 24, 2020, dispositional order reflected this termination.[2] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However,

---

[2]A.W. III's father's parental rights were terminated below. A.B.-1's father's parental rights were also terminated. The children are placed with a foster parent, and the permanency plan for both children is adoption by that foster parent.

a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her motion for a post-dispositional improvement period because she experienced a substantial change in circumstances since the granting of her post-adjudicatory improvement period and, she argues, she was likely to fully participate in a post-dispositional improvement period. According to petitioner, she complied with the terms and conditions of her post-adjudicatory improvement period including demonstrating sobriety by supplying six months of clean drug screens, ceasing all contact with D.H., actively participating in therapy for seven months, maintaining her own apartment for over nine months, maintaining employment, participating in adult life skills sessions, and completing all parenting sessions. In light of this, she argues that the circuit court should have granted her a post-dispositional improvement period. Upon our review of the record, we find petitioner is entitled to no relief.

West Virginia Code § 49-4-610(3)(B) provides that a circuit court may grant a parent a post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." Further, because petitioner was granted a prior improvement period, she was required to show that she "experienced a substantial change in circumstances" and that due to the change in circumstances, she was likely to fully participate in a second improvement period. It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015).

It is clear from the record that petitioner was not likely to fully participate in a post-dispositional improvement period based on her performance in her post-adjudicatory improvement period. First, in her brief, petitioner states that she "maintained a documented period of sobriety from alcohol and illegal drugs by participating in drug screens" for six months. However, this statement mischaracterizes the evidence as petitioner's drug screen results showed that she tested positive for various substances, including opiates and alcohol in May, June, July, September, October, and November of 2019. The record shows that petitioner obtained narcotics by repeatedly going to various emergency rooms and failing to alert the staff that she had an addiction to drugs. Further, the record shows that petitioner tested positive for alcohol several times during the six months of her alleged sobriety. Also, petitioner completely ceased submitting to drug screens after November of 2019, resulting in more than fifty-five missed drug screens. As such, petitioner's claims of extended sobriety are utterly belied by the record.

Moreover, although petitioner ceased all contact with D.H., she nonetheless violated the terms and conditions of her post-adjudicatory improvement period by fraternizing with a known drug abuser. Also, petitioner's therapy sessions were not successful according to her therapist, as petitioner failed to be truthful and adequately address her substance addiction. Furthermore, petitioner presented no evidence that she experienced a substantial change in circumstances that

4

rendered her more likely to substantially comply with the terms of an additional improvement period as she stopped drug screening in November of 2019, stopped regularly attending supervised visits in January of 2020, and stopped regularly attending parenting and adult life skills sessions near October of 2019.[3] Accordingly, we find no error in the circuit court's denial of her motion.

This evidence also supports the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that a circuit court may terminate a parent's parental rights upon finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination of parental rights is necessary for the welfare of the children. Pursuant to West Virginia Code § 49-4-604(d)(3), a circuit court may determine that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when

> [t]he abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to follow through with a reasonable family case plan, despite an extended period of time to do so. She failed to meet certain goals of the case plan during the improvement period's duration, especially from November of 2019 until disposition when petitioner completely stopped submitting to drug screens. Further, petitioner tested positive for substances throughout the proceedings yet never obtained drug treatment outside of her therapy sessions. Additionally, petitioner's supervised visitations were suspended in March of 2020 for her cancellations and inappropriate behavior with the children. Finally, petitioner failed to avoid fraternizing with inappropriate individuals who abused drugs. Thus, the circuit court did not err in concluding that there was no reasonable likelihood that she could correct the conditions of neglect or abuse in the near future. Petitioner's main argument on appeal is that she, in fact, complied with all aspects of her post-adjudicatory improvement period, but this argument is without merit as discussed above. Insomuch as petitioner argues that she should have been given additional time and an opportunity to demonstrate that she could correct the conditions of abuse and neglect, we have previously held that "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened." *Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4, in part (citation omitted).

Although it is true that petitioner attended therapy sessions, petitioner did not make progress towards addressing her addiction through therapy and downplayed her substance abuse problem in her psychological evaluation. Most importantly, petitioner completely failed to attain any drug treatment for her substance abuse outside of her failed therapy sessions. Thus, the record shows that the children would have been at risk if returned to petitioner's care, given her untreated

---

[3]We note that there were disruptions in service providers for parenting and adult life skills sessions that were out of petitioner's control as the DHHR switched between several different organizations to provide these services to petitioner throughout the proceedings.

substance abuse issues. As such, it is clear that the welfare of the children required termination of petitioner's parental rights.

Insofar as petitioner argues that the circuit court should have granted her a less-restrictive alternative disposition, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 24, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: March 16, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton