STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

*In re* **S.T., L.T., E.E., and M.E.**

**No. 20-0956** (Putnam County 20-JA-45, 20-JA-46, 20-JA-47, and 20-JA-48)

**MEMORANDUM DECISION**

Petitioner Mother C.T., by counsel Brenden D. Long, appeals the Circuit Court of Putnam County's November 17, 2020, order terminating her parental rights to S.T., L.T., E.E., and M.E.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Lisa A. Estes, filed a response on the children's behalf in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her motion for an improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2020, the DHHR implemented a protection plan with petitioner after two-year-old E.E. was found in the father J.E.'s vehicle surrounded by large quantities of heroin, methamphetamine, and fentanyl, and with J.E. unresponsive. During arrest, J.E. was so intoxicated that he could not communicate with law enforcement officers and attempted to evade arrest by biting an officer. J.E. also stated that E.E. had not eaten since the prior day. The DHHR then placed E.E. with petitioner who was thirty weeks pregnant with another child by J.E. and agreed to the DHHR's protection plan that required no contact with J.E. Petitioner obtained a domestic violence protective order ("DVPO") against J.E. when he appeared at her home after being released from incarceration. Petitioner admitted to the DHHR worker that she had a history of drug abuse and that she relapsed in February of 2020 with methamphetamine. Petitioner claimed to have custody

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

of S.T. and L.T. but stated that she left them to be raised by their father, R.T., so that she could be with J.E. In May of 2020, petitioner gave birth to M.E. Despite the protection plan over the previous four months and the DVPO, petitioner allowed J.E. to live in the home with E.E. and M.E. As a result, the DHHR filed a child abuse and neglect petition in July of 2020, alleging that petitioner abused methamphetamine while pregnant with M.E., violated the DHHR's protection plan and the DVPO by allowing J.E. to live in the home, exposed the children to domestic violence and placed them in unsafe situations, and allowed J.E. to expose the children to drug abuse. The DHHR further alleged that petitioner was previously adjudicated as an abusing parent for exposing S.T., LT., and E.E. to domestic violence, substance abuse, and unsafe living conditions in 2013 and 2017, but successfully completed improvement periods resulting in the dismissal of those petitions. Thereafter, petitioner waived her preliminary hearing.

The circuit court held an adjudicatory hearing in August of 2020, during which petitioner stipulated that she placed the children in unsafe situations and environments, permitted the children to have contact with J.E. in violation of court order, exposed the children to domestic violence, and abused methamphetamine while pregnant with M.E. The circuit court accepted the stipulations and adjudicated petitioner as an abusing parent. Petitioner then moved for a post-adjudicatory improvement period, which the court held in abeyance.

According to the guardian's report submitted prior to the dispositional hearing, petitioner had been adjudicated as an abusing parent for domestic violence, substance abuse, and exposing the children to unsafe situations in three separate cases. The guardian opined that petitioner continued to make poor decisions, which placed the children at risk of physical, emotional, and psychological harm. The guardian noted that she interviewed sixteen-year-old S.T. and ten-year-old L.T. and learned that petitioner abruptly left the two older children by "sneaking out" while S.T. was in the shower, later texting him that she left to go live with J.E. Also, while petitioner was visiting L.T., she violated the active DVPO by leaving with J.E. During that visit, L.T. was so distraught that she begged petitioner not to leave and laid in front of the door to prevent her from leaving. Petitioner instead left the home by stepping over crying L.T. In the guardian's opinion, petitioner had no meaningful relationship with L.T. and S.T. and failed to provide for any of their needs.

Notably, the guardian reported that petitioner complained to family members that she did not have the ultimate say as to whether J.E. saw M.E. and E.E. This concerned the guardian as petitioner admitted knowing of J.E.'s drug abuse and selling of illicit drugs yet claimed that J.E. was a "good father." Also, according to family members, at the time of J.E.'s arrest in March of 2020, E.E. had been in his custody for ten days and petitioner had not checked on the child. According to petitioner, she left the home after an argument without taking E.E., which allowed J.E. to leave with the child for several days. J.E. was arrested twice at petitioner's home for violating the DVPO and his criminal bond. Most importantly, after M.E. and E.E. were removed from petitioner's care, petitioner continued to reside with J.E. and the two had a domestic altercation in August of 2020, which resulted in petitioner's hospitalization with serious injuries. Petitioner stated that she started the fight by pushing J.E. The guardian added that J.E. has multiple domestic battery charges and active felony charges in Cabell County, West Virginia, for which petitioner is the victim. Of note, the guardian indicated that in the 2017 case, the court ordered that J.E. have no contact with E.E. and that he must petition the court to modify this condition.

However, J.E. never did so and petitioner allowed J.E. to have contact with E.E. despite the court's explicit orders in the prior 2017 case. Finally, the guardian stated that petitioner lacked housing and employment, and was not in a position to provide for the children.

Despite the receipt of numerous services such as parenting and adult life skills classes, drug screening, drug treatment, and supervised visitations during two previous improvement periods, petitioner failed to make lasting changes as she continued her drug abuse and violent relationship with J.E. The guardian also noted that S.T. requested that petitioner's parental rights be terminated.

In October of 2020, the circuit court held a dispositional hearing, wherein the DHHR moved to terminate petitioner's parental rights based upon her failure to make lasting changes and continued abuse and neglect of the children despite the implementation of numerous services in two previous cases. The guardian recommended the termination of petitioner's parental rights, arguing that her behaviors demonstrated an unwillingness to change her lifestyle, relationships, and habits to provide for the children's needs. In response, petitioner moved for a post-adjudicatory or a post-dispositional improvement period, arguing that she ceased having contact with J.E., was seeking employment and housing, and had been testing clean on her drug screens. Upon hearing the evidence, the circuit court found that petitioner was presently unable or unwilling to provide for the children's needs. The circuit court concluded that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated her parental rights by its November 17, 2020, order.[2]

The Court has previously held:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]The father of S.T. and L.T. was a nonabusing parent, and the permanency plan for the children is to remain in his care. J.E., the father of E.E. and M.E., had his parental rights terminated below. According to the DHHR, the permanency plan for those children is adoption by their foster family.

On appeal, petitioner argues that the circuit court erred in denying her motion for a post-adjudicatory or post-dispositional improvement period. Petitioner asserts that she was willing to comply with the terms and conditions of an improvement period, had all negative drug screens, was actively seeking employment and housing, and had successfully completed improvement periods in two prior cases. Upon our review of the record, we find petitioner is entitled to no relief.

West Virginia Code §§ 49-4-610(2)(B) and (3)(B) provide that a circuit court may grant a parent a post-adjudicatory or post-dispositional improvement period when the parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate in the improvement period." It is well established that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Most importantly, this Court has clearly held that "[t]he circuit court has the discretion to refuse to grant an improvement period when no improvement is likely." *In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002).

Here, the guardian's report clearly indicates that petitioner was unlikely to improve. Most glaringly, the report stated that petitioner believed J.E. was a "good father" and should be around the children despite her acknowledgement of his drug dealing and placing E.E. in serious danger by his unresponsiveness and having the child surrounded by large quantities of drugs, including fentanyl. Also, petitioner expressed frustration with the DVPO and the court's orders regarding J.E.'s contact with the children, arguing that she should have the discretion to allow contact. Overall, petitioner gave no indication that she would completely sever her abusive relationship with J.E. and choose to protect her children from their caustic and violent relationship. Indeed, the record shows that petitioner failed to recognize the severity of their domestic violence and how it impacted the children. This Court has recognized that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Petitioner also demonstrated a pattern of prioritizing her relationship with J.E. over the relationship with her two older children, S.T. and L.T., and failed to provide for those children's needs or have any meaningful relationship with them. Thus, the evidence below suggests that petitioner was unlikely to fully participate in and benefit from any improvement period as she gave no indication that she comprehended the severity of her actions and needed to make any lasting changes in her life to protect herself and the children. Therefore, we find no error in the circuit court's decision to deny her an improvement period.

The above evidence likewise supports the termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no

reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

The record establishes that petitioner demonstrated an inadequate capacity to solve the problems of abuse or neglect either on her own or with help. As noted above, the same allegations of abuse and neglect have persisted since 2013. Contrary to petitioner's assertion that the DHHR has a "three-strike rule" requiring the DHHR to oppose an improvement period in a third case, no such rule exists. Rather, the DHHR argued below that petitioner had already received numerous services to address the same issues of abuse and neglect in the instant case, yet continued to abuse drugs, remain in a violent relationship with J.E., and place the children at risk of physical, psychological, and emotional harm. On appeal, petitioner also claims that the DHHR failed to make reasonable efforts to preserve the family but fails to support this argument. According to the record, the DHHR worked with petitioner for over four months through a protection plan prior to filing the underlying petition. It was only after petitioner failed to follow through with the plan and permitted J.E. back into her home, that the DHHR went forward with the underlying proceedings. Petitioner conveniently ignores the fact that services were implemented prior to the petition's filing in this case and blames the DHHR for her own failures. Additionally, petitioner had no employment or housing by the time of the dispositional hearing and was unable to provide for the children's needs. As petitioner failed to make lasting changes after the receipt of services in now three cases and, as discussed above, did not indicate a willingness to change her circumstances in the instant case, the circuit court properly found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future.

Insomuch as petitioner argues that she should have been given more time to correct the conditions of abuse and neglect, we apply the following precept:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Here, M.E. and E.E. were under the age of three and deserved stability. Furthermore, petitioner lacked a meaningful relationship with L.T. and S.T., and sixteen-year-old S.T. requested that petitioner's parental rights be terminated. As such, it was necessary for the children's welfare that petitioner's parental rights be terminated. Accordingly, we find no error in the circuit court's conclusion that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that termination of petitioner's parental rights was necessary for the children's welfare.

For the foregoing reasons, we find no error in the decision of the circuit court, and November 17, 2020, order is hereby affirmed.

5

Affirmed.

**ISSUED**:  June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton