**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**


*In re* **A.H., A.M., K.W.-1, K.W.-2, and R.H.**

**No. 21-0880** (Kanawha County 19-JA-718, 20-JA-105, 20-JA-106, 20-JA-107, and 18-JA-137)


## MEMORANDUM DECISION


Petitioner Mother N.S., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's September 23, 2021, order terminating her parental rights to A.H., A.M., K.W.-1, K.W.-2, and R.H.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Steven R. Compton, filed a response in support of the circuit court's order. The guardian ad litem, Bryan B. Escue, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The history of petitioner's involvement with Child Protective Services ("CPS"), her prior abuse and neglect proceedings, and the various petitions filed in the matter currently on appeal are protracted and convoluted. Relevant to the issues on appeal, it is important to note that petitioner was involved in abuse and neglect proceedings in 2010 in regard to A.H. and R.H., and that R.H. was later placed in DHHR custody through a matter filed in 2018 and appears to have remained in the DHHR's custody throughout the pendency of the proceedings currently on appeal. Further relevant to this appeal is the fact that several adult respondents lived in the home and were involved

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two children share the same initials, they will be referred to as K.W.-1 and K.W.-2, respectively, throughout this memorandum decision.

1

in the proceedings. According to the record, CPS reported approximately seventy investigations into various members of this household prior to the initiation of the matter currently on appeal.

In regard to petitioner and the issues currently before the Court, the DHHR filed its initial petition in November of 2019 and then filed several amended petitions over the course of the proceedings. The petitions alleged that petitioner abused drugs, left the children with inappropriate caregivers, and suffered from mental health issues. Specifically, the petitions described petitioner engaging in bizarre behavior, including her repeated assertions that bugs and worms were emanating from her body. The petitions also indicated that petitioner refused to submit to drug screens, as ordered. According to one petition, petitioner was explicit that after having submitted to a drug screen in court, "she would not take more than one screen."

Because of the various amendments to the petition and other continuances, the matter did not come on for adjudication until October of 2020. A CPS worker testified to the facts contained in the petitions. According to the witness, petitioner appeared to be under the influence when CPS arrived at the home and was "acting very bizarre, very paranoid." The witness testified that petitioner was sitting on a toilet naked and refused to leave the bathroom. Petitioner's mother "had to keep going into the bathroom to try to get [petitioner] dressed, to try to get her to come out of the bathroom." When petitioner eventually exited, "she was saying there were worms and bugs coming out of her, and she had taken some toilet paper to wipe herself so that everybody could see the worms and bugs coming out of her." According to the witness, she ultimately had to call emergency services to address petitioner's conduct. When emergency personnel arrived, they informed the CPS worker that "they had been to the house multiple times for [petitioner's] drug use and issues regarding that." The court then took the matter of adjudication under advisement.

In January of 2021, adjudication resumed. The DHHR moved for petitioner's adjudication based on the testimony from the prior hearing. Petitioner objected and then testified on her own behalf. Petitioner accused the DHHR's witness of lying and denied having abused drugs prior to the children's removal, although she admitted that she "did get on drugs after they took the kids." Petitioner testified that she "sought out help about three months ago to get on something to help . . . with [her] drug addiction" and was taking prescribed Subutex. According to petitioner, she was awaiting instructions on placement into a different treatment program. Petitioner also admitted that she had not yet submitted to a single drug screen as required, although she indicated that she had been incarcerated for a portion of the proceedings. When asked why she was incarcerated, petitioner responded, "I prefer not to say because I didn't do it." Ultimately, petitioner admitted that she had been incarcerated for domestic battery and obstructing an officer. Based on the evidence, the court found that petitioner lacked credibility in regard to the conditions at the time of the petition's filing. As such, the court adjudicated her as an abusing parent.

In April of 2021, the matter proceeded to a dispositional hearing. A DHHR caseworker testified that petitioner's participation in services was "very sporadic" and that providers repeatedly tried to contact her by phone and by appearing at the address she had provided. According to the witness, from March to December of 2020, the DHHR was "never able to provide services for [petitioner]" because of her refusal to remain in contact with the Department. The witness also explained the steps the DHHR took to try to accommodate petitioner, including arranging for her to report for drug screens in another county upon petitioner's request. Despite

2

these accommodations, petitioner still refused to comply with required screening. The witness further acknowledged that petitioner was presently in substance abuse treatment and had been for "some time now." The witness also clarified that the DHHR did not offer petitioner services following her adjudication, despite petitioner having requested the same. Finally, the witness addressed the length of time petitioner's children had been in foster care. Although it varied by child, the witness indicated that R.H. had been in DHHR custody since 2018, and that several of the children had been in foster care for at least fifteen months.

Petitioner testified concerning her participation in substance abuse treatment for approximately two months and indicated that she had approximately six months of treatment left. She also indicated that she had recently gained employment. Petitioner testified in support of her earlier filed motion for an improvement period, indicating that she would be willing to participate in any services offered. She also admitted to having relapsed in January of 2021. The DHHR and guardian then moved to terminate petitioner's parental rights.

Ultimately, the court found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future because she made inadequate efforts to remedy the conditions of abuse and neglect and failed to follow through with the reasonable family case plan or other services to remedy the issues. The court noted that "[i]t certainly . . . [took] a long time for [petitioner] to come to terms herself with what she needed to do, but in the meantime we have had children reach stability of sorts." The court also found that the children's best interests required termination of her parental rights, as this would provide the children with consistency and stability. As such, the court terminated petitioner's parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

---

[2]All parents' parental rights were terminated below, with the exception of R.H.'s father. The permanency plan for R.H. is to remain in the father's custody. The permanency plan for the remaining children is adoption in their current foster homes.

On appeal, petitioner's lone argument is that termination was inappropriate because she should have been granted an improvement period. Petitioner cites to her late participation in substance abuse treatment as a basis to have granted her an improvement period, but this argument ignores her extended noncompliance with services and the fact that further delay to the proceedings, and the children's permanency, was not appropriate.

While it may be true that petitioner requested services following her adjudication in January of 2021, the record shows that she was not compliant with services prior to that hearing as a result of her refusal to stay in contact with the DHHR or otherwise submit to drug screens as ordered. Essentially, petitioner did nothing for the first fourteen months of the proceedings and then demanded that she be permitted to participate in services after the DHHR's repeated attempts to provide those same services were ignored. On appeal, petitioner argues that she "was never granted an improvement period in order to show the [c]ourt that she could comply." This argument is entirely unavailing, as petitioner was given over a year in which to demonstrate her ability to comply with services, yet she willfully refused.

Further, while petitioner's participation in substance abuse treatment is commendable, she admitted that her treatment would not be completed for another six months beyond the dispositional hearing, at which point the proceedings would have been ongoing for over twenty-five months and the children would have remained in foster care in excess of two years. According to West Virginia Code § 49-4-610(9),

> no combination of any improvement periods or extensions thereto may cause a child to be in foster care more than fifteen months of the most recent twenty-two months, unless the court finds compelling circumstances by clear and convincing evidence that it is in the child's best interests to extend the time limits contained in this paragraph.

The record here is devoid of any findings that granting petitioner an improvement period that would have resulted in the children's continued placement in foster care would have been in their best interest. To the contrary, the court found that the children deserved the permanency and stability that terminating petitioner's parental rights would provide. Additionally, on appeal to this Court, petitioner fails to set forth any compelling circumstances that would have justified such a significant extension of the applicable timeframes. Considering that petitioner created a substantial delay through her refusal to participate in services from the outset of the case, we find no abuse of discretion in the circuit court's denial of her motion for an improvement period. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period.").

Finally, petitioner argues that the circuit court erred in finding that there was no reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the near future. According to petitioner, she demonstrated her ability to correct the conditions because she had been drug-free for over two months and wanted to continue on a path of sobriety. Again, while it is commendable that petitioner submitted to substance abuse treatment, the record nonetheless supports the circuit court's finding. According to West Virginia Code § 49-4-604(d), "'[n]o

4

reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." While it is true that petitioner demonstrated limited sobriety late in the proceedings, the overwhelming evidence below supports the circuit court's finding that petitioner was unlikely to substantially correct the conditions of abuse and neglect. For over one year, petitioner demonstrated not only an inadequate capacity to solve the problems, but a willful refusal to even attempt to correct them.

Further, petitioner acknowledges that she required six additional months to complete her treatment, thereby demonstrating that her issues with substance abuse had not yet been resolved. As we have explained,

> "[c]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. As outlined above, the timeframe for petitioner to participate in an improvement period had expired. As such, her argument that the court should have exceeded this timeframe upon speculation that she would successfully complete her substance abuse treatment and remedy the conditions of abuse and neglect was not appropriate. Accordingly, we find no error in the circuit court's termination of her parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 23, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: April 14, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice Alan D. Moats sitting by temporary assignment