**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **J.M. and B.P.**

**No. 21-0922** (Roane County 20-JA-19 and 20-JA-20)

**MEMORANDUM DECISION**

Petitioner Mother A.A., by counsel Michael Hicks, appeals the Circuit Court of Roane County's October 15, 2021, order terminating her parental rights to J.M. and B.P.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Katica Ribel, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Ryan M. Ruth, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without first granting her an improvement period and when petitioner was able to demonstrate that she could remedy the circumstances giving rise to the petition.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2020, the DHHR filed a petition alleging that petitioner's substance abuse negatively impacted her ability to parent the children. The petition also alleged that petitioner failed to protect the children by allowing them to reside with B.H., petitioner's live-in boyfriend, who was charged with possession with intent to deliver marijuana and methamphetamine following a traffic stop that led to the Child Protective Services ("CPS") investigation. The petition noted that petitioner was in the car during this traffic stop and that after B.H.'s arrest, the DHHR enacted safety services with the family from February 20, 2020, to May 4, 2020. However, petitioner and B.H. tested positive for methamphetamine in April and May of 2020. Despite these positive drug screens, petitioner denied drug use. The DHHR also named B.H. as a respondent

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

custodian of the children. Based on the foregoing, the DHHR alleged that petitioner abused and neglected the children.

At an adjudicatory hearing in May of 2020, petitioner stipulated to the allegations against her, including that her substance abuse negatively affected her ability to parent and that she failed to protect the children by residing with B.H. and allowing drug activity in the home. Accordingly, the circuit court adjudicated petitioner as an abusive and neglectful parent. At this same hearing, the court adjudged B.H. as a custodian of the children after finding that he resided in the home and actively participated in parenting the children. The court adjudicated B.H. as an abusing custodian based upon evidence that B.H. abused methamphetamine in the home, was actively involved in the illegal distribution of methamphetamine while he resided in the family home, and that his substance abuse impaired his ability to care for the children.

Immediately following adjudication, petitioner was accepted into family treatment court ("FTC"). As a result, the court deferred disposition until after petitioner graduated from FTC. Pertinent to this appeal, on July 20, 2020, upon the motion of the guardian and the DHHR, the court dismissed B.H. as a respondent custodian of the children based on proffer that B.H. no longer lived with petitioner, was no longer in a relationship with her, and did not wish to exercise any custodial rights he may have had to the children. After his dismissal, B.H. did not request to be renamed a party, receive services, or to otherwise participate in the proceedings. By January of 2021, B.H. had pled guilty to the felony offense of delivery of a controlled substance.

In late March of 2021, petitioner was removed from FTC due to her lying to the FTC members about continuing her relationship with B.H. The FTC noted that B.H. had been dismissed as a party and had not participated in services. The guardian and the DHHR filed a motion to terminate petitioner's parental rights arguing that there were no other services that could be provided to petitioner that were not already provided by the FTC.

During the final dispositional hearing in August of 2021, petitioner testified that she 1) was currently in a relationship with B.H.; 2) had been untruthful to the FTC regarding the ongoing relationship with B.H.; 3) knew that she was removed from FTC due to this relationship; and 4) if she were given custody of her children, she would want B.H. to be around them. Petitioner stated that B.H. had completed substance abuse treatment and was sober. The FTC social worker testified that petitioner did not test positive for drugs during her participation in the program, but violated several rules of the program, including lying to the FTC about B.H. and actively staying in a relationship with B.H. The FTC worker further testified that she learned of petitioner's ongoing secret relationship with B.H. when one of the children told her that he and his sister were with B.H. on Christmas and that B.H. gave her a ring that said "Marry Me." The worker found further evidence of the engagement on petitioner's phone and items in petitioner's vehicle such as a shirt that said "fiancé." The worker explained that petitioner was given multiple opportunities to stay in FTC if she left her relationship with B.H., and that petitioner knew that her parental rights were at stake due to the relationship. The worker testified that petitioner eventually admitted to the relationship with B.H. in February of 2021. On cross-examination, the worker stated that even if it were true that B.H. had achieved sobriety, she remained concerned with his criminal behavior and a threat that B.H. made to a CPS worker.

By order entered on October 15, 2021, the court found that although petitioner had apparently addressed her issues with substance abuse, "the additional issue of failing to protect the children from inappropriate individuals in the home still exists and clearly has not been truly acknowledged and addressed." The court went on to state that despite petitioner's prior stipulation that B.H. was an inappropriate person to have around the children, she now claims that B.H. is a "changed person and is not the same individual who was not only convicted of selling methamphetamine and, whether jokingly or not, threatened the CPS worker in this case when he stated, 'CPS needs to f**king suck start a 12-guage.'" As such, the court did not find that B.H. was a changed individual as he had been dismissed as a party shortly after adjudication and "did not participate in any services to demonstrate a change in behavior or his ability to safely care for the children." The court concluded that petitioner continued to put her "own wants and needs before the best interest of the children." Based on the above evidence and the fact that petitioner had received services for approximately fourteen months, the court denied petitioner's motion for an improvement period. The court further found that this evidence supported finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was necessary for the children's welfare. Accordingly, the court terminated petitioner's parental rights to the children.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner alleges that the circuit court erred in denying her motion for an improvement period because she was able to demonstrate by clear and convincing evidence that she was likely to fully participate in an improvement period. Without belaboring petitioner's specific arguments in support of this assignment of error, we find that petitioner's failure to fully acknowledge the conditions of abuse and neglect at issue are determinative.

---

[2] J.M.'s father's parental rights were terminated below. According to the parties, the permanency plan for J.M. is adoption by C.P., the father of half-sibling B.P. Also, B.P. was reunified with C.P.

3

Petitioner argues that she fully addressed her substance abuse issues, and the record supports this contention as she passed all drug screens and fully participated in the substance abuse requirements of FTC. However, despite stipulating that B.H. was an inappropriate individual and that she placed the children at risk by allowing them to live with him—while he was actively selling methamphetamine out of the home—petitioner chose to continue her relationship with B.H. and lie about it. The record shows that petitioner was aware that a condition of FTC was to cease a relationship with B.H., and she instead chose to secretly stay in a relationship with him while participating in other services with the FTC. Below and on appeal, petitioner attempts to excuse her refusal to leave B.H. by arguing that he is a better and changed person. In her brief, petitioner states that if B.H. had been given the chance, he "could have also received services alongside [her] to further demonstrate that he was a changed person." However, the record shows the exact opposite occurred as B.H. was dismissed from the case after he allegedly broke off his relationship with petitioner, no longer lived with her, and did not wish to exercise any custodial rights to the children. Importantly, the court adjudicated B.H. as an abusing custodian, but he was dismissed as a party and did not remain involved in the proceedings to show the court that he was able to address his issues. Further, the court found that B.H. threatened CPS workers, and the FTC worker testified that she knew of his specific threats to another employee. The court, having heard the testimony of witnesses and reviewing the evidence found that petitioner's testimony that B.H. was a changed person was simply not credible. We decline to disturb this credibility determination. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). As such, other than petitioner's self-serving testimony below, her contention that B.H. was a better and changed person is utterly belied by the record.

Ultimately, the record demonstrates that petitioner failed to acknowledge that her ongoing relationship with B.H. was a condition of abuse and neglect that she was required to correct before she could be reunified with the children. We have previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). As the circuit court found, petitioner admitted to her relationship with B.H., did not see a problem with it, and testified that if the children were returned to her custody, she would want B.H. in their lives, despite her prior stipulation at adjudication. Based on the circuit court's findings about petitioner's refusal to acknowledge the conditions of abuse and neglect at issue, we find no abuse of discretion in denying her motion for an improvement period. *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period.").

We likewise find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental rights

4

upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [his or her] own or with help."

Here, after nearly fourteen months of services as well as participation in FTC, petitioner chose to put her "own wants and needs before the best interest of the children." Even taking petitioner's assertions about her participation in FTC as true, we have previously explained that "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (citation omitted). Despite being fully aware that her relationship with B.H. jeopardized her parental rights to the children, petitioner chose to stay in the relationship and thus failed to address one of the conditions of abuse and neglect that led to the filing of the petition. As such, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 15, 2021, order is hereby affirmed.

Affirmed.

**ISSUED**: May 12, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn